Mosier *v.* Hilton.

Ordered accordingly.

[Monroe General Term, September 5, 1853. *Welles, Selden* and *T. R. Strong*, Justices.]

———◇———

## Mosier *vs.* Hilton.

15b 657
13ap 54
15b 657
22ap305

The act of the legislature, of March 28, 1850, " for the relief of the creditors of the Lockport and Niagara Falls Railroad Company," (*Laws of* 1850, *p.* 159,) was not void as violating the provision of the constitution of this state which declares that " no private or local bill, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title." Taggart, J. dissented.

Neither is that act void, as being in conflict with the first section of the 8th article of the constitution, which provides that corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes, and in cases where in the judgment of the legislature, the objects of the corporation cannot be attained under general laws. Taggart, J. dissented.

That act created no new corporation.

The legislature has authority, under the constitution, to create a railroad corporation by special act, whenever *in its judgment*, a special act is necessary; notwithstanding the constitutional provision.

By the original charter of the Lockport and Niagara Falls Railroad Company, granted in 1834, the directors, in case of disagreement between them and the owners of land taken, as to the price, were required to present their petition to the vice chancellor of the 8th circuit, who was authorized to appoint three freeholders to appraise the land, &c. By an act passed in 1847, the authority of the vice chancellor was transferred to any court of record of the county where the land was situated, and the company was authorized to apply to such court, and proceed in the manner provided in their charter, for the purpose of acquiring real estate. *Held* that a county court had jurisdiction of proceedings to acquire the title to land situated within the same county. And that the application need not be made to the supreme court; nor need the proceedings be under and according to the general railroad act.

The county court is not deprived of jurisdiction, in such a case, by the 29th and 30th sections of the code.

THIS was an action for an injury to real estate. The defendant justified the entry under the authority of the " Rochester, Lockport and Niagara Falls Railroad Company." The entry upon the premises was admitted. The important questions in the case, arose upon the defense, namely, whether the Rochester, Lockport and Niagara Falls Railroad Company had a legal existence as a corporation and had acquired a good title to the *locus in quo,* and a right to enter and construct their road thereon. The facts, and the questions raised by the plaintiff, appear sufficiently in the opinion. The learned justice before whom the cause was tried held that the defendant was justified, and directed a verdict for the defendant, and the plaintiff now moved for a new trial, upon exceptions taken.

*B. L. Bessac,* for the plaintiff.

*E. Darwin Smith,* for the defendant.

MARVIN, P. J. It becomes necessary to examine the statutes touching the Lockport and Niagara Falls Railroad Company, and the statute under which the Rochester, Lockport and Niagara Falls Railroad Company claim existence. The Lockport and Niagara Falls Railroad Company was incorporated by an act passed for that purpose, April 24, 1834. (*Session Laws, p.* 225.) The stockholders were constituted a body corporate, with power to construct a single or double railroad from Lockport to Niagara Falls. The directors were empowered to cause examinations and surveys of the route to be made, and to select the line for the road, and designate it by a certificate to be filed in the office of the clerk of Niagara county. (*Id.* § 15.) The corporation was empowered to purchase, &c. real estate. If there was a disagreement as to the price of the land, the directors were empowered to present their petition to the vice chancellor of the 8th circuit, setting forth, &c.; the vice chancellor was to direct such notice to the owner of the land, as he should deem proper, of the time and place of hearing the parties, and upon proof of due service of the notice he was authorized *to appoint three compe-*

*tent and disinterested freeholders* of the county of Niagara to appraise the land. The duties of the commissioners were declared, and they were to award to the owner what they should deem to be the *full value* of the land. The vice chancellor was to examine the report and hear the parties, if desired, and increase or diminish the amount awarded, if he should be satisfied injustice had been done.

The Lockport and Niagara Falls Railroad Company constructed the road from Lockport to the Falls. By an act passed April 24, 1841, (*Sess. Laws, p.* 101,) the corporation was authorized to extend their railroad from Lockport to the western termination of the Auburn and Rochester railroad in Rochester, or to the western termination of the Tonawanda railroad in Batavia. The corporation was authorized to increase its capital stock. It was authorized, in constructing such road, to exercise all the powers, and it was subjected to all the provisions and restrictions contained in the original charter. By the act of 1842, chapter 86, the directors were authorized further to increase the capital stock, and the original charter was so amended as to authorize the commissioners appointed by the vice chancellor to allow damages to the owner of the land taken, in addition to the simple *value* of the land taken. By the act of 1847, (*Sess. L. p.* 504,) the original charter was so amended, as to authorize the corporation to obtain authority to take lands in like manner as in the charter, by applying to any court of record of the county where the land is situated, and such court was empowered to perform the same duties, and grant the same orders, as by the charter was conferred on the vice chancellor. And by this act, the same proceedings were to be had in the several counties into or through which the road might run, as by the charter was required to be done in the county of Niagara. The act of 1850, (*Sess. Laws, p.* 159,) is entitled, "an act for the relief of the creditors of the Lockport and Niagara Falls Railroad Company." By the first section of this act, it was made the duty of the president of the corporation, or one of the directors to be appointed by the president, and he was authorized, to advertise and sell the real and personal estate, including the franchise of the company, at pub-

Mosier *v.* Hilton.

lic auction, to the highest bidder. It was declared that the sale should be absolute, and that it should vest in the purchaser or purchasers the property, real or personal, of the company, and the franchise, rights and privileges of the corporation as fully and as absolutely as the same were then possessed by the company. The money arising from the sale, after paying costs, was to be applied, first, to the payment of a certain judgment, and then to other liens according to priority, and the surplus, if any, was to be divided ratably among the other creditors, and then if there should be an overplus it was to be divided ratably among the then stockholders. By the second section of the act, it was declared that the purchaser or purchasers should have the right to sell and distribute stock to the full amount which was authorized by the act of incorporation, and the several amendments thereto ; and to appoint an election, and choose nine directors for the management of the corporation, and organize the company anew, by such name as a majority of the directors should adopt and certify to the secretary of state ; and when so organized, the company should have the same powers and be subject to the same restrictions as the then existing company. There was then a proviso, that nothing in the act should impair or affect the subscriptions for new stock, or the obligations or liabilities of the company incurred in the extension of the road from Lockport to Rochester, &c. It has seemed to be necessary thus to bring into view the above legislation, in order to appreciate the objections made to the title of the Rochester, Lockport and Niagara Falls Railroad Company to the *locus in quo*.

It is insisted, apparently with much confidence, by the plaintiff's counsel, that the act of 1850 is unconstitutional and therefore void, upon the ground that it violated the 16th section of article three of the constitution of this state. This is the important question in this case ; and as my brother Taggart, for whose opinions I have great respect, has come to the conclusion that this position is correct, I shall proceed to state as briefly as may be, my reasons for a different opinion.

The provision of the constitution referred to is, " No private

Mosier *v.* Hilton.

or local bill, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title." The title of the act is, "An act for the relief of the creditors of the Lockport and Niagara Falls Railroad Company." It is not denied that the first section of this act, authorizing the sale, is justified by the title of the act; but it is insisted that the second section embraces a subject or subjects differing in character from those in the first section, and that they are not " expressed in the title" of the act; in other words, that the expression in the title is not sufficient to authorize the matter contained in the second section. The only "subject" expressed in the title is *the relief of the creditors of*, &c. The measure or extent of relief is not indicated. No one, from reading the *title* of the act, would necessarily get the idea that the act was to provide for the sale of the real and personal property of the company and its franchises, &c.; so that in this respect it might be claimed that the whole act is obnoxious to the objection that the title does not express the *subject*. But in the view I take of the title and the subjects or matters in the body of the act, no such objection is tenable. The Lockport and Niagara Falls Railroad Company was in debt. It had creditors; and we learn from the act that some of them had judgments against the company. The object of the act was to provide the means for the payment of the creditors, and as large means as could be raised from the property, rights and franchise of the company. The course authorized for this purpose was a sale of all its property and franchise, the proceeds to be applied to the payment of its debts, and in case there should be any overplus, then such overplus to be divided among the then stockholders, who may also be regarded as creditors of a corporation.

It was undoubtedly important to obtain, upon the sale, a very considerable sum, otherwise the creditors might get but little *relief*. Hence the importance of including in the sale, the franchise, rights and privileges of the corporation, and of declaring that the purchaser or purchasers should be at once invested with all the property real and personal, and the franchise, rights and privileges, as absolutely as the same were then possessed by the

company. Had the act simply authorized the sale of the real and personal property without conferring upon the purchaser any of the corporate rights, it is not probable that the sale would have produced much relief to the creditors. Had the act stopped with the first section it would have been very imperfect. The property of the corporation, its franchise, rights and privileges would have vested, upon the sale, in the purchaser or purchasers, but there would have been no directors or other officers, and by the original charter the concerns of the corporation were to be managed by directors to be chosen annually from the stockholders. Would the purchaser have had the right to choose directors ? and if so, where would he have found the stockholders from whom to choose them ? It is not necessary to answer these questions. The legislature very properly, in view of the new state of circumstances, made provisions by which the purchaser or purchasers would be able to make their purchase available and valuable, and without which or other useful and valuable provisions, it is not probable that the property, &c. of the corporation would have produced enough to afford much relief to its creditors. The legislature, to induce persons to purchase, declared what their rights should be, and I am really unable to see why, under the *title of this act,* "for the relief of the creditors of," &c. the legislature had not the power to grant to the purchaser or purchasers any privileges or corporate rights which may be granted under the constitution, as an inducement to them to purchase the property, franchise, rights and privileges of this insolvent corporation, at a liberal price, so as to raise money for the benefit or relief of the creditors of the corporation. It seems to me that all the provisions of the act are well calculated to effect the object indicated or expressed in the title. But in truth the act is not open to the objection that it confers new powers and privileges, except perhaps in the right to change the name of the corporation. It is declared that the purchaser or purchasers shall have the right to sell and distribute stock to the full amount authorized by the act of incorporation and the several amendments thereto. The increase of the capital stock had been authorized by previous acts, and the purchasers ac-

quired these rights and privileges. It provides for an election of directors and the organization of the company anew. All this was necessary to make the purchase available, certainly so far as the franchise, rights and privileges were concerned. In organizing the company anew a majority of the directors were authorized to adopt another name. I can see no objection to this, under the title of the act, as it may have been an induce-ment to the purchaser to pay a more liberal price and thus raise a larger fund for the relief of the creditors. It is declared that the company, when so organized, shall have the same powers, and be subject to the same restrictions, as the present company. All this was proper under the title, and such would have been the effect of the sale of the property, franchise, rights and privileges of the corporation, had not this declaration been made in the act. In my judgment all the objections made to the constitutionality of the act of 1850 are unfounded.

It is also objected that the act of 1850, for the relief of the creditors of the railroad company, is in conflict with the first sec-tion of the 8th article of the constitution. It is insisted that the legislature, by the act of 1850, created a railroad corporation by *special act*, after the general railroad law had been enacted. There are two answers to this objection. *First.* The act of 1850 created no new corporation. The Lockport and Niagara Falls Railroad Company was incorporated in 1834. Its charter had been several times amended, and it possessed property, fran-chises, rights and privileges, which under the act of 1850 were sold, and the company was organized anew by choosing new di-rectors and by changing its name. It is a continuation of the first corporation under a new name. *Second.* The legislature, in my opinion, has authority, under the constitution, to create a railroad corporation by special act. The language of the constitution is, " Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes ; *and in cases where, in the judgment of the legisla-ture,* the objects of the corporation cannot be attained under general laws." If in the *judgment of the legislature,* the ob-jects of the corporation cannot be attained, under general laws,

then the legislature has the power to create the corporation by special act. Where is the authority to control *the judgment* of the legislature? Have the courts the power to review the acts of the legislature and to declare that in a particular case, where a corporation has been created by special act, the case was not one where, in the judgment of the legislature, the object of the corporation could not be attained under general laws? The legislature by creating the particular corporation, declare their judgment—the members acting under their oaths to support the constitution—and in my opinion courts have no power to review this discretion or judgment of the legislature. It is no answer to say that by passing a general law authorizing the formation of corporations for specified objects, the legislature have pronounced judgment that all such purposes or objects can be attained under general laws. The legislature may, in the particular case, be of the opinion that the objects cannot be attained under general laws, and how are we to ascertain such opinion or judgment? Again; the legislature may, as often happens, change its judgment or opinion. The question is one that the courts have no right to meddle with; and in my opinion the legislature has the power to create any corporation by special act, so far as section one of article eight is concerned. Section eight in the same article expressly prohibits the legislature from passing any act granting any *special charter* for banking purposes; thus, impliedly at least, leaving the legislature to the free exercise of its judgment in other cases, touching the propriety of a special charter.

In the case under consideration, it may be remarked that the objects of the act for the relief of the creditors of the Lockport and Niagara Falls Railroad Company could not have been attained by any general law. I dismiss the question of the constitutionality of the act of 1850 for the relief of the Lockport and Niagara Falls Railroad Company.

There are numerous other exceptions taken by the plaintiff's counsel. I have examined them, but do not deem it necessary to remark upon all of them. All the exceptions touching the

organization of the company anew, by its present name, are unfounded.

The corporation instituted proceedings before the county court of Orleans county, for the purpose of acquiring the title to the *locus in quo* for its road. And it is insisted that the county court had no jurisdiction. By the original charter, as we have seen, the directors were to present their petition to the vice chancellor of the 8th circuit, who was authorized to appoint three competent and disinterested freeholders to appraise the land, &c. &c. We have also seen that by the act of 1847, the authority of the vice chancellor was transferred to any court of record of the county where the land is situated, and the company was authorized to apply to such court, and proceed in the manner provided in their charter, for the purpose of acquiring real estate. The land in the present case is situated in Orleans county, and the Orleans county court is a court of record, and I see no reason why it had not jurisdiction of the proceedings to acquire the title to the land. The corporation has all the powers, and is subject to all the restrictions, pertaining to the Lockport and Niagara Falls Railroad Company, and we have seen what they were. It is now said that the application should have been made to the supreme court, and that the proceedings should have been under and according to the general railroad act. By the general railroad act, all the powers and privileges contained in the act were extended to all existing railroad corporations within the state ; and they were subjected to all the duties, liabilities and provisions of the general act, not inconsistent with the provisions of their charters, contained in certain sections specified, among which are the sections touching the acquisition of title to real estate. (*Sess. Laws* 1850, *p.* 235, § 49.) The proceeding for acquiring title under the general law is quite different from the proceedings provided in the charter of the present corporation, and they are inconsistent with the provisions in the charter. It was not, in my opinion, intended by the general law to affect the special provisions in the charter of this company, and compel it to adopt the mode pointed out in the general act. At the same time it

was at liberty to resort to the mode provided by the general law, as all the powers and privileges contained in that law are conferred upon this corporation.

It was also objected by the plaintiff that the county court had been deprived of all jurisdiction, by the code; and we are referred to section 29 of the code. By this section, all statutes then in force conferring or defining the jurisdiction of the county courts, so far as they conflict with the act, are repealed, and it is declared that these courts shall have no other juris- diction than that provided in the next section. By the 11th subdivision of the next (30th) section the county court may exercise all the powers and jurisdiction conferred by statute upon the late court of common pleas of the county, &c. respect- ing ferries, &c. enumerating many subjects, and adding " and all other powers and-jurisdiction conferred by statute, which has not been repealed, on the late court of common pleas of the county or on the *county court,* since the late courts of common pleas were abolished, except in the trial and determi- nation of civil actions." The power conferred by the act of 1847, (*Laws of* 1847, *p.* 504,) upon the county court of Orleans county is here expressly saved. It is true the act of 1847 does not name the " county court," but it confers the power upon any court of record of the county where the land is situated, and the county court of Orleans county was and is a court of record. It is not necessary to resort to § 471 of the code, to which reference was made, to sustain the powers of the county court in the present case. Indeed, as I understand that section, it has no application to the particular question, viz, the jurisdic- tion of the county court; now under consideration. By an amendment of this section made in 1852, it is *the second part of the act,* (the code) that is not to affect certain proceedings and statutes named, among which is " any special statutory remedy not heretofore obtained by action." This relates to special statutory *remedies,* a question of practice and not of jurisdiction. It is in the *first part* of the code that the juris- diction of the courts is defined, and there in subdivision 11,

§ 30, I find the power of the county court of Orleans county to act upon the petition presented in this case, properly saved.

Many objections were made to the petition presented to the county court by the corporation, on the ground that it did not contain the requisite facts to give jurisdiction. The petition is properly addressed, and it is the petition of the directors of the Rochester, Lockport and Niagara Falls Railroad Company. It shows that the route of the road of the company as surveyed and laid out runs through the farm of the plaintiff, situate in the county of Orleans, and all other facts, as it seems to me, necessary to show jurisdiction. It is signed A. Ward, vice president, and he makes an affidavit that he is one of the directors and vice president of the company, and that the facts set forth in the petition are true, &c.

Many of the objections are founded upon the position that the proceedings should have been under the general railroad act. These objections have been sufficiently answered. By adverting to the charter, (*Sess. Laws* 1834, *p.* 228, § 14,) it will be seen that the directors may present their petition, setting forth the necessity of such lands for the making of the road, and of the attempt and failure to purchase the same, with the name and residence of the owner, and the reason why the purchase cannot be made, and thereupon the vice chancellor was to direct notice to be given to the owner. The petition contained substantially all the facts required by the statute, and was, in my opinion, amply sufficient to give the court jurisdiction. And this jurisdiction was not lost by any omissions on the part of the court to comply with the requisites of the charter.

The defendant proved the filing of a map and survey duly certified by a majority of the directors of the Lockport and Niagara Falls Railroad Company, in December, 1848, and a certificate of the location of the road, and offered them in evidence, and the plaintiff objected on the ground that the railroad company were bound to show that *they* had surveyed and located the route of their road; and also because it did not appear that the "last named company" had adopted this map and location. These objections are not well founded. The plaintiff's counsel

Mosier *v.* Hilton.

has been in error in supposing that the "last named company," as he designates the corporation by its new name, was obliged to do over what had been done by the Lockport and Niagara Falls Railroad Company, touching the location of the road, the making of maps, and surveys, &c. &c. The act of 1850, for the relief of the creditors of the Lockport and Niagara Falls Railroad Company, answers all these objections. The purchaser or purchasers took all the property and the franchise and the rights and privileges of the corporation, as they then existed, and when it was organized anew, by its new name, it occupied the position the corporation occupied at the time of the sale, with all its previous powers, and subject to its restrictions, and all that had been done enured to its benefit. It is not necessary to examine particularly whether the two questions put by the plaintiff to his witness, upon the question of damages were improperly overruled, as the justification of the defendant was complete. A new trial should be denied.

MULLETT, J. concurred.

TAGGART, J. dissented.                    New trial denied.

[ERIE GENERAL TERM, November 7, 1853. *Marvin, Mullett* and *Taggart,* Justices.]