## JOHN ACERS v. ELIZA MOYNE, ET AL.

### SUPREME COURT, AUSTIN TERM, 1883.

*Railway Corporations—Successors—Rights of.*—When a railroad corporation is sold out the purchaser succeeds to all the rights, powers, &c., of the sold out corporation. R. S. 4260. No change of name, no notice or publication of the purchase or merger is necessary, nor is the successor, or new organization compelled on every occasion to show by what special action or authority it has succeeded to the rights of the old company.

*Judicial Cognizance.*—Courts take judicial cognizance of the legal effect of such sale and purchase.

*Title to Land—Evidence.*—It would be sufficient in order to enable a purchaser from such corporations to maintain an action of trespass to try title, to show title to the *locus in quo* in the original corporation, and to prove that he held by deed from that corporation or its lawful successors or assigns, and produce a grant to them from the government and a deed to himself vesting in him the fee.

*Same—Burden of Proof.*—If it is sought to resist a recovery by one in possession against such a title, it is the duty of the person so resisting, by way of defense to show the secret vice or defect in the title which is not apparent on its face.

*Change of Name.*—When the name of the corporation has been changed by special act of the Legislature, it is necessary to produce such act for the purpose of identifying the corporation.

Appeal from Clay County.

*L. C. Barrett,* for appellant.

*A. K. Swan,* for appellees.

Opinion by West, J.

In Stephenson v. Texas & Pacific Railway Company, 42 Texas,

163, it was held that this company, the Texas Pacific R. R. Co., which was by purchase and otherwise, the successor of the Southern Pacific R. R. Company, whose existence was merged in that of the Texas & Pacific R. R. Co., was a proper sole party defendent in a proceeding by writ of error, to bring in review before this court, the correctness of a judgment rendered in favor of the Southern Pacific R. R. Co., whose purchaser and successor it had become. This court in that case, with a view to determine its own jurisdiction, (const. art. 5., sec. 3) inquired into the facts of the succession and merger of the two companies, and held that the writ of error would be against the Texas & Pacific R. R. Co., as the successor of the Southern Pacific R. R. Co. In support of that view, the court in that case cite the following authorities:

Paine v. Lake Erie & Louisville R. R. Co., 31 Ind., 283.

The Indianopolis, Cincinnati and La Fayette R. R. Co. v. Jones, 29 Ind., 465.

Racine & Miss. R. R. Co. v. The Farmers' Loan & Trust Co., 49 Ill , 331.

Ohio & Miss. R. R. Co., v. Wheeler, 1 Black, 286.

Commonwealth v. Atlantic & Gt. West. R. R. Co., 53 Pa. St., 9; 21 Ill., 451; 25 Ill., 353.

Philadelphia & C. R. R. Co. v. Howard, 13 How. 309.

Mosur v. Hilton, 15 Barb., 657. See also, Redfield on Railways, Vol. 2., Ch. 38, "On the Consolidation of Railroad Companies."

In that case (42 Tex., 163) this court holds that while the facts before it do not disclose the exact terms and conditions, under which the merger or consolidation of the two corporations was effected, yet from the provisions of the general railroad law of the State on the subject, as well as to the special acts of the Legislature as to these corporations, that were introduced in evidence before them, they are authorized to draw the conclusion that the Texas & Pacific R. R. Co., has, as a matter of fact, succeeded to the charter, privileges and rights of the Southern Pacific Railroad Co., and hence a citation in error served on them is sufficient to give the court jurisdiction to revise a judgment rendered in favor of its predecessor.

In the present case we are of opinion, that the district court erred, in finally excluding from the consideration of the jury, the appellant's chain of title to the land in suit, derived through the B. B. B. & C. R. R. Co., and the Galveston, Harrisburg & San Antonio R. R.

Co., as its successor. The General Laws of the State provide when a railroad corporation is sold out, that the purchaser succeeds to all the rights, powers, &c., &c., of the sold out corporation, and such purchasers can still continue to exist and do business as a corporate body under the name of the sold out company. Pas. Dig. Vol. 1., Art., 4912; Rev. Stat., Art. 4260. They can proceed after such purchase to transact business, as fully as the sold out corporation could do, before that event

No change of name is required by the general law on the subject. No notice or publication of the purchase or merger is necessary; nor is there any more reason for such notice, than there is that the public at large, should know the various changes annually made in the *personnel* of a corporation, by the transfer in the course of business of its stock to strangers, or the changes made by death or affected by the withdrawal of an old, or the issue of a new series of stock certificates, or any like official action of the corporation. The new company, by operation of the general laws of the State, becomes the successor of the sold out corporation, and occupies to the public, in the future, the same relation the sold out company did in the past.

As to the creditors and the general liabilities of the old company, for that, the general law makes special provision. 1 Vol. Pas. Dig., Art. 4916; Rev. Stat., Art. 4264.

In its future dealings with strangers, the new organization is not compelled on every occasion, to show by what special action or authority it has succeeded to the rights of the old company.

The court, by virtue of the general laws of the State on the subject, takes judicial cognizance of the legal effect, in general, of such sale and purchase, upon the status of the sold out company and of its purchasers, without inquiring into the character or nature of the purchases or transfer. Hence, in the present case, had not the purchasers of the sold out company deemed it best to change the name of the corporation, there would have been no necessity for the purchaser of the land, to have proceeded further, in developing his right of action, than to have exhibited a legal title to the land in suit, in the corporation by name, and a conveyance from such corporation, or from the lawful and recognized successor of such sold out corporation by its original name to himself. All the particulars of that purchase and succession, the minute details of it, and the

legal consequences flowing from it, and the facts as to whether such purchase was made under execution, or at a trustee's sale, or by order of court, or all the particulars as to what exact property was acquired by the purchase, are matters not in issue in this case.

It would be sufficient in order to enable a purchaser from such corporation to maintain an action of trespass to try title, to show title to the *locus in quo* in the original corporation, and to prove that he held by deed from that corporetion, or its lawful successor or assigns, and produce a grant to them from the government, and a deed from such corporation to himself vesting in him the fee.

From this exhibition of title, the court would presume that the land certificate on which the patent in question is based, passed by the purchase to the new company, who retained and had the right in their dealings to use the name of the sold out company. The fact that there had been ten years before the date of the suit, a sale of the entire road-bed, rolling-stock, franchises and charter rights of the company, coupled with the production by the purchaser of the patent, and a conveyance to him from the new company, of the land granted and described in it, would be strong proof that the land certificate in question, had long before passed into the possession of the new company and had become their property. If it is sought to resist a recovery by one in possession against such a title, then it becomes the duty of the person so resisting by way of defense to show the secret vice or defect in the title, which is not apparent on its face. Let it be shown for instance, that the corporation had previously parted with its title to some one else, or that in some other legal mode, the title of the purchaser from the corporation was defective. There was no effort made to establish any such defense. And as the patent issued to the original corporation as late as 1877, many years after the change of ownership, and is found in the possession of the new company, the presumption of ownership in the new company becomes very strong. The patent inures to their benefit, and a purchaser from them obtains a legal title to the land so purchased, that would be good against any one, who could not by evidence disclose a right superior to that acquired by the purchase. In this case, but for the fact that the purchasers of the sold out corporation, by authority of a special act of the Legislature, had changed the name of the sold out company, the apparent legal title

of appellant to the land in question, would have been complete upon its face, upon his simply showing a patent from the State to the original corporation, and a deed from such corporation to himself, as would have been done by the evidence in this case, but for the subsequent change in the name of the company. As, however, the name of the corporation had been changed by a special act of the Legislature, it became necessary to produce such act for the purpose of identifying the corporation. The sole object of its production was to show, that the new corporation, under whom the appellant held, was in fact, the same as the one to whom the patent to the land in suit had issued. For that purpose, the special act of the Legislature of the date of 27th of July, 1870, was proper evidence.

The preamble to that act, like the preamble to any other act of the Legislature, general or special, is only competent to show that the Legislature in passing the law in question, took into consideration the matters recited in the preamble. Sedgwick on Statutory constructions, p. 42 (Pomeroy's Ed.)

It furnishes no proof of the existence of the facts therein recited, and it is so expressly declared, in the 12th section of the special act under consideration. When that act was introduced in evidence, and the identity of the corporation conveying to the appellant with the company, to whom the land was granted by the State, was established, the appellant showed a good legal title in himself, to the land in suit. If there were really matters growing out of the dealings of the purchasers of the sold out corporation, with its affairs, or with its creditors or with others, that vitiated the title conveyed by such purchasers and successors, in the hands of the appellant, they were matters of defense, and should have been made the subject of proof by the parties relying on them, to defeat the legal title. The court then erred under the circumstances, in excluding the title of the appellant.

There are other matters in the record, which would seem to indicate, that even if the appellant's title was not perfect, that the appellees did not sustain such an attitude to the case, as would enable them to take advantage of its defects. As, however, the relation of the respective parties to each other, under the admitted facts in the case in reference to the possession of the land, have not been discussed by either party, we refrain from expressing any opinion whatever upon that branch of the case. Ella Moyne appears to be

a minor. The case seems to have proceeded as to her without the appointment of a guardian *ad litem.*

On the reversal of the cause a guardian *ad litem* should be appointed for this minor, so that her rights can be protected, and she be bound by the judgment of the court. Reversed and remanded.