CASTERTON v. TOWN OF VIENNA et al.

(Supreme Court, Appellate Division, Fourth Department. April 10, 1897.)

STATUTES—LOCAL ACTS—REPEAL BY GENERAL ACT.

Laws 1883, c. 21, § 25, provides that all real property within certain towns, and taxable therein, at the time said towns issued certain railroad aid bonds, should continue to be taxed in such towns until payment of the bonds. Laws 1886, c. 315, provides that any tract of land lying in two towns should be taxed, if occupied, in the town where the owner resides, and, if unoccupied, in the town where each part shall lie, and repeals all acts inconsistent therewith. *Held*, that the act of 1883, being a special statute, was not repealed by the act of 1886.

Green, J., dissenting.

Appeal from special term.

Action by Joseph K. Casterton, individually and as executor of and trustee under the will of Thomas Casterton, deceased, against the town of Vienna and others. There was a judgment in favor of plaintiff, and defendant town of Vienna appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Howard C. Wiggins, for appellant, town of Vienna.
William A. Matterson, for respondent town of Verona.
Bliss & Briggs, for plaintiff respondent.

FOLLETT, J. This action was begun March 19, 1895, to have it determined whether 79 acres of land, owned and occupied by the plaintiff, and situate in the town of Vienna, were assessable for taxes in that town, or in the town of Verona. The towns of Vienna and Verona adjoin each other, and are in the county of Oneida. In 1869 three adjoining parcels of land, aggregating 174 acres, situate in the town of Verona, were united in ownership, and were thereafter occupied by the owner as a single farm, which land has always been, and now is, assessed for taxes in that town. April 1, 1871, the owner of the 174 acres, the plaintiff's ancestor, purchased 79 acres of land

in the town of Vienna, adjoining the 174 acres, which 79 acres had always theretofore been assessed in the town of Vienna. Since April 1, 1871, these four parcels of land, amounting to 253 acres, have been occupied by the owner as one farm, the dwelling and farm buildings being upon that part of the farm situate in the town of Verona. In the years 1891 to 1894, inclusive, the 79 acres were assessed in both towns, and the owner has paid double taxes on that parcel, each town claiming the right to assess it. The plaintiff is indifferent which town his land is assessed in, but desires that it be determined in which town it is legally assessable, so as to avoid the payment of taxes in both towns. This action was brought for that purpose, and the towns answered separately, each claiming to be entitled to assess the property. Which town is entitled to assess the 79 acres is the only question involved in this appeal. At special term it was held that the 79 acres were assessable in the town of Verona, and a judgment accordingly was ordered in favor of the plaintiff, with costs against the town of Vienna.

Between April, 1866, and August, 1870, one city, three villages, and thirty-nine towns in the counties of Oswego, Oneida, Madison, Chenango, Cortland, Delaware, Ulster, and Orange subscribed and paid for $5,856,800 of the capital stock of the New York & Oswego Midland Railroad Company, as authorized by chapter 398 of the Laws of 1866 and the acts amendatory thereof and supplementary thereto. To provide the means to pay for the stock, the bonds of the several municipalities were issued, and, although the stock became substantially valueless, to their credit it should be said that only one municipality contested the payment of its bonds, which town, however, ultimately paid and secured to be paid the whole amount of its bonds, with a small abatement of interest in arrears. The greater part of the bonds of these municipalities has been paid, and the remainder was refunded when the original bonds became due. This record of municipal integrity is believed to be unequaled in the history of municipal bonding for the construction of railroads. Among the towns bonded was Vienna, which, in January, 1868, issued bonds to the amount of $68,500, which was invested in the stock of the railroad. These bonds ran 20 years, and became due in January, 1888, at which time the town had paid $13,500 of its debt, leaving outstanding $55,000, which were refunded, pursuant to chapter 316 of the Laws of 1886. Two thousand dollars of said renewal bonds matured each year for the first five years, and three thousand dollars each year for the next fifteen years; so that the last installment of said renewal bonds will not become due and payable until January, 1908.

When Vienna issued its bonds, the 79 acres were assessable in that town, and so remained until April 1, 1871, when the land became part of the farm of the ancestor of the plaintiff, and then it became taxable in the town of Verona, pursuant to section 4, art. 1, tit. 2, c. 13, pt. 1, Rev. St., which provided:

"Sec. 4. When the line between two towns or wards divides a farm, or lot, the same shall be taxed, if occupied, in the town or ward where the occupant resides; if unoccupied, each part shall be assessed in the town in which the same shall lie: and this, whether such division line be a town line only, or be also a county line."

By chapter 287 of the Laws of 1871 this section was amended so that it read as follows:

."Sec. 4. When the line between two towns or wards divides a farm or lot, the same shall be taxed, if occupied, in the town or ward where the occupant resides; except when such town line shall be also a county line, in which case each part shall be assessed in the town in which the same shall be situated, in the same manner as unoccupied lands are now assessed."

By chapter 355 of the Laws of 1872, chapter 287 of the Laws of 1871 was repealed, and with it fell the section of the Revised Statutes first above quoted.    People v. Board of Supervisors of Montgomery Co., 67 N. Y. 109; Harris v. Supervisors, 33 Hun, 279; Hampton v. Hamsher, 46 Hun, 144, affirmed 124 N. Y. 634, 26 N. E. 540.

May 11, 1886, an act entitled "An act to amend the Revised Statutes," being chapter 315 of the Laws of that year, was passed, which provided as follows:

"Section 1. Article 1, of title two, of chapter thirteen, part one, of the Revised Statutes, is hereby amended by inserting immediately after section three thereof, the following, which shall be known as section four: 'Sec. 4. When the line between two towns, wards or counties divides a farm or lot, the same shall be taxed, if occupied, in the town, ward or county where the occupant resides; if unoccupied, each part shall be assessed in the town, ward, village or county where the same shall lie.'

"Sec. 2. All acts or parts of acts inconsistent with this act are hereby repealed.

"Sec. 3. This act shall take effect immediately."

From April 24, 1872, when chapter 287 of the Laws of 1871 was repealed, until May 11, 1886, when the last act above quoted was passed, there was no general statute in this state providing that farms situated partly in one town and partly in another were assessable in towns other than those where the lands were situated, so that all lands were assessable in the town where situated, pursuant to sections 1 and 2, art. 1, tit. 2, c. 13, pt. 1, Rev. St.    Permitting lands situated in one town to be assessed in another town is and always has been an exception to the general statutes regulating the assessment of realty.

By chapter 152 of the Laws of 1882, chapter 398 of the Laws of 1866 (the "Midland Bonding Act") was amended by adding thereto this section:

"Sec. 25. All real property assessed or liable to be assessed upon the assessment roll of any town at the time of issuing bonds by said town pursuant to this act, and all acts amendatory thereof, shall continue to be assessed and assessable for all purposes whatsoever in said town until said bonds, or any renewals thereof, are fully paid, and if the owner of such real property does not reside within said town, then such real property shall be assessed as nonresident land or to any occupant of said real property actually residing within said town."

The section last quoted was found to be unjust in its operation, for it provided that land assessed in a bonded town when it was bonded, whether in or out of the town, should continue to be assessable therein until the bonds were paid, so that in case a farm partly in a bonded town and partly in an unbonded one was afterwards divided, and the part in the bonded town owned by one proprietor and the part in the unbonded town by another proprietor, the land of the latter was assessable in the bonded town.    To rem-

edy this defect, section 25 was amended by chapter 21 of the Laws of 1883, so that it reads as follows:

"Sec. 25. All real property within the corporate limits of any town assessed or liable to be assessed upon the assessment roll of such town at the time of issuing bonds by said town pursuant to this act, and all acts amendatory thereof, shall continue to be assessed and assessable for all purposes whatsoever in said town until said bonds, or any renewals thereof, are fully paid; and if the owner of such real property does not reside within said town, then such real property shall be assessed as non-resident land or to any occupant of said real property actually residing within said town."

The last two statutes were passed to prevent the owners of farms in bonded towns adjoining the line of unbonded towns from purchasing a few acres in the latter town, and removing their residences into the unbonded towns, and thus escape taxation in the bonded towns. This practice, though not common, was occasionally resorted to, and sometimes by persons who had been active in bonding their towns.

The counsel for the town of Verona contends that chapter 21 of the Laws of 1883 was repealed by chapter 315 of the Laws of 1886. On the other hand, the counsel for the town of Vienna asserts that chapter 21 of the Laws of 1883, being a local act, was not repealed by chapter 315 of the Laws of 1886. The judgment of the special term is rested on the effect of the second section of chapter 315 of the Laws of 1886, above quoted. I am of the opinion that, under the decisions in this state and of other states, no such effect should be given to that section. A general statute does not repeal a special one relating to the same subject, unless the general statute is a codification of the law relating to the subject, or expressly or by clear implication repeals the special statute. Chapter 315 of the Laws of 1886 is not a codification of the laws relating to taxation, but simply restores the statute relating to the assessment of farms divided by town lines. There is now the same reason for the special statute relating to the method of assessing farms in bonded towns as when chapter 21 of the Laws of 1883 was passed, and the reason will exist until the bonds are paid. The statute is eminently an equitable one, for it merely provides that the property which assumed the burden of aiding in the construction of the railroad shall not be allowed to escape therefrom, and thus increase the burden borne by farms which do not adjoin town lines.

It seems to me that Whipple v. Christian, 15 Hun, 321, affirmed 80 N. Y. 523, is decisive of the question involved. That case arose out of the following statutes: By chapter 305 of the Laws of 1844 an act was passed entitled "An act for the better security of mechanics and others erecting buildings and furnishing materials therefor, in the several cities in this state, (except the city of New York,) and in the villages of Syracuse, Williamburgh, Geneva, Canandaigua, Oswego and Auburn." By chapter 402 of the Laws of 1854 an act was passed entitled "An act for the better security of mechanics and others erecting buildings in the counties of Westchester, Oneida, Cortland, Broome, Putnam, Rockland, Orleans, Niagara, Livingston, Otsego, Lewis, Orange and Dutchess." By chapter 204 of the Laws of 1858 the last-mentioned statute was extended,

and declared to be applicable to all the counties of this state, except the counties of New York and Erie. By the second section of this act it was provided: "All acts and parts of acts inconsistent with this act are hereby repealed." The question arose whether this repealing clause repealed chapter 305 of the Laws of 1844, and it was held that it did not. The court said:

"Neither the act of 1854 nor that of 1858 referred in terms to the act of 1844, and neither can be so construed as to impair the force of its provisions, unless we depart from the well-settled rule that a special act will not be deemed repealed by implication in consequence of the passage of a general law, containing a general repealing clause of inconsistent legislation."

The same rule is declared in Re Evergreens, 47 N. Y. 216, Re Delaware & H. Canal Co., 69 N. Y. 209, and Village of Gloversville v. Howell, 70 N. Y. 287. Whipple v. Christian, supra, has never been doubted or questioned in this state, and it is in harmony with the decisions of other states. Fish v. Branin, 23 N. J. Law, 484; State v. Clarke, 25 N. J. Law, 54; Mayor, etc., of Newark v. Board of Freeholders in Essex Co., 40 N. J. Law, 595; End. Interp. St. § 223; Cooley, Tax'n, 294. In Lewis v. City of Syracuse, 13 App. Div. 587, 43 N. Y. Supp. 455, this court applied the same rule to a special statute relating to the city of Syracuse.

It is urged that the legislature must have intended to have repealed some statute by the repealing clause in chapter 315 of the Laws of 1886, and there was no other statute relating to the same subject except the Midland act. Chapter 342 of the Laws of 1883 provided for the assessment of property divided by the boundary line of a town or city which passed through any dwelling house, and a careful examination may disclose other special acts relating to the assessment of property divided by town, city, or county lines. So far as we know, it has never been contended that this last act was repealed by the repealing clause under consideration. Whatever force there may be in legislative construction supports the contention of the town of Vienna. After this case was tried and a judgment entered, the legislature revised and codified the tax laws of this state, which became chapter 908 of the Laws of 1896, the tenth section of which makes provision for the assessment of realty divided by the boundary line of a tax district. The case of the towns bonded in aid of the Midland road is not covered by the section. More than 150 general and local statutes relating to the subject of taxation are enumerated in the schedule of laws repealed, but neither chapter 152 of the Laws of 1882 nor chapter 21 of the Laws of 1883 is repealed. So far as I have been able to examine them, they contain general and special provisions, which, being provided. for by chapter 908 of the Laws of 1896, the general and special acts were expressly repealed; but, the provisions in respect to the Midland towns not being provided for, the Midland acts were not repealed. It seems to me that the legislature intended that the Midland acts should continue in force and provide the rule for the assessment of farms divided by town lines. It can hardly be said that the failure to repeal the Midland acts was an oversight, for one of the revision commissioners long practiced law in one of the

bonded towns, and in a county wherein there are several bonded towns, and it cannot be presumed that he was ignorant of these acts. In my opinion, chapter 21 of the Laws of 1883 was not repealed by chapter 315 of the Laws of 1886, but it is still in force; and the 79 acres should be assessed in the town of Vienna. There being no dispute about the facts, a retrial of this action is unnecessary.

The judgment should be reversed, with costs in this court and in the court below in favor of the town of Vienna, and against the town of Verona, and the plaintiff's costs in the court below and his disbursements on this appeal taxed and recovered against the town of Verona. All concur, except GREEN, J., dissenting.

GREEN, J. (dissenting). The only question presented is whether the special statute was repealed by the subsequent general statute. The special and general acts under discussion dealt with precisely the same subject; so that it would seem that the legislature, when it passed the general law, had in mind the subject with which the prior law dealt. When the old rule was re-enacted by the Laws of 1886, the legislature, by a separate and independent section, added a repealing clause of all other acts, or parts of acts, inconsistent therewith. There is no statute, or part of a statute, to which this repealing clause could possibly relate, except the special act in question. The legislature, therefore, in taking pains to add to the act, in an independent section, the repealing clause, undoubtedly intended to repeal something. The only act then in existence bearing upon the subject which was then in the mind of the legislature was this special act. We cannot avoid this conclusion by saying that the legislature usually adds a repealing act. It very frequently omits to add such an act. It cannot be that this plain provision of the statute can be avoided on the plea that the legislature meant nothing in enacting this provision of the statute, but that it was enacted because of a custom of the legislature to enact just such provisions, intending that they should be without force or effect. The plain intention of the legislature is clearly expressed in the repealing section, and it should have great weight in determining the question of the intention of the legislature. Full force and effect to the general statute, in every part of the state, except in towns bonded in aid of the railroad, would have been given without the addition of the repealing clause. If, however, the legislature intended that the general act should apply to towns situate as the appellant is, then this repealing clause was necessary, in order to remove the special act. The special act created no system. It provided only in what towns certain parcels of land should be assessed; but the system for assessing the same was provided by the Revised Statutes, and that system was uniform throughout the state. The special act was not part of a system of local administration. No such system was created by it. The Revised Statutes provided the only system for assessing lands, and under that system the parcel of land in question must have been assessed, no matter in what town the same was assessable. No rea-

.sonable motive for retaining the special act, notwithstanding the passage of the general act, can be assigned.  Under the special act, .all lands within the corporate limits of Vienna are subject to as-.sessment, although the owner resides in Verona; while, under the general act, lands situated outside the limits of Vienna may be assessed in that town, if the owner resides there.  Are not the two cases inconsistent?  Counsel for Vienna does not take the position that the act of 1882–83 would prevent assessment of lands in Verona when the owner resides in Vienna.  The result is, we have two in-·consistent rules on the same subject-matter.  The railroad makes no objection.  The special act, passed long after the issue of bonds, was not a contract between the state and the town which would preclude ·the state from restoring the original system or rule of assessment,. although the result of the operation of the rule would be to absolve some lands in the bonded town from liability to assessment in that .town.  Besides, the general act may also work to the advantage of the bonded town, and to the detriment of the other.  That town is claiming too much.  It insists upon the application of the general .act where it would work to its advantage, and repudiates its appli-·cation where it would operate to its detriment, and then claims the special act must govern.

I am of the opinion that Justice VANN properly disposed of the ·case on the trial, and that his opinion correctly states the law governing the disposition that should be made of this case.