BRADFORD B. WILCOX, Appellant, *v.* TRUMAN BAKER and HERMAN SNELL, Respondents.

*Town bonded in aid of the New York and Oswego Midland railroad — the land therein of a farm divided by the town line, the occupant of which resides in another town, must be assessed in the former town — the title of chapter 21 of 1883 sufficiently expresses its subject.*

Under the constitutional provision (§ 16, art. 3, Constitution of 1894) "that no private or local bills, which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title," the subject expressed in the title may be a general one, and thereupon all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, may properly be incorporated in the act and are germane to its title.

The amendment made by chapter 21 of the Laws of 1883 to chapter 398 of the Laws of 1866, entitled "An act to facilitate the construction of the New York and Oswego Midland railroad, and to authorize towns to subscribe to the capital stock thereof," by the terms of which amendment section 25 of the original act is made to declare that "all real property within the corporate limits of any town assessed or liable to be assessed upon the assessment roll of such town at the time of issuing bonds by said town * * * shall continue to be assessed or assessable for all purposes whatsoever in said town until said bonds, or any renewals thereof, are fully paid," is an amendment within the reasonable scope of the subject named in the title of the original act, and is constitutional.

Where a farm is divided by the line between two towns, one of which has issued its bonds in aid of a railroad, and comes within the provisions of said amendment, the land, constituting part of the farm, within that town must be assessed therein, although the occupant resides upon that part of the farm which is within the other town.

APPEAL by the plaintiff, Bradford B. Wilcox, from a judgment of the Supreme Court in favor of the defendants, entered in the

office of the clerk of the county of Madison on the 7th day of February, 1895, upon the decision of the court rendered after a trial at the Madison Circuit before the court without a jury.

*C. W. Underhill,* for the appellant.

*Henry B. Coman,* for the respondents.

MERWIN, J. :

In 1887 the defendants, together with one Morgan, who has since died, were the assessors of the town of Lebanon, in the county of Madison. The plaintiff was the owner and occupant of a farm of about 250 acres, of which about 150 acres were in the town of Lebanon, and about 100 acres in the adjoining town of Hamilton, in said county. The plaintiff resided in 1887 on that part which was in the town of Hamilton. This farm, prior to 1882, was composed of two farms; one of about 120 acres in the town of Lebanon which, from 1866 to 1871, was owned by the wife of plaintiff, and occupied by the plaintiff and his wife, and assessed in that town, and the other, a farm mainly in the town of Hamilton, on which plaintiff resided at the time he purchased the Lebanon farm in 1882. The assessors of the town of Lebanon, in making out the assessment roll for 1887 for that town, assessed about 120 acres of the plaintiff's farm at $4,000, and entered it at that amount upon the roll. They knew plaintiff resided on that part of the farm which was in the town of Hamilton, but refused, on application of plaintiff, to strike off the assessment. Such proceedings were thereupon had that the plaintiff by reason of said assessment was compelled to pay a tax of eighty dollars and eighty-five cents. The Lebanon lands assessed were those the plaintiff bought in 1882.

The plaintiff claimed in his complaint and at the trial that the assessors of the town of Lebanon had no jurisdiction to make the assessment, for the reason that he resided on that part of the farm which was in the town of Hamilton. The trial court held that, under the provisions of section 25 of chapter 398 of the Laws of 1866, as amended by chapter 21 of the Laws of 1883, the tax was legal, and, therefore, dismissed the complaint.

The plaintiff claims that section 25, above referred to, is not in force for two reasons : (1) That the act of 1883, under which it gets

its force, was in effect repealed by chapter 315 of the Laws of 1886; and (2), that if not so repealed, it was void as in violation of section 16 of article 3 of the Constitution, which provides that "no private or local bill which may be passed by the Legislature shall embrace more than one subject, and that shall be expressed in the title."

By section 4 of article 1, title 2, chapter 13, part 1 of the Revised Statutes, it was provided that when the line between two towns or wards divides a farm or lot, the same shall be taxed, if occupied, in the town or ward where the occupant resides. This section was amended by chapter 287 of the Laws of 1871, but that act was repealed by chapter 355 of the Laws of 1872, thus, as it has been held, repealing the original section. (*Casterton* v. *Town of Vienna*, 17 App. Div. 97, and cases cited.) By chapter 315 of the Laws of 1886, passed May 11, 1886, the original section of the Revised Statutes was in substance re-enacted. Under that, the plaintiff's whole farm was taxable only in the town of Hamilton, unless the act of 1866, as amended in 1883, is applicable.

Chapter 398 of the Laws of 1866 is entitled "An act to facilitate the construction of the New York and Oswego Midland Railroad, and to authorize towns to subscribe to the capital stock thereof." Chapter 21 of the Laws of 1883, passed and taking effect February 9, 1883, is entitled "An act to amend chapter three hundred and ninety-eight of the laws of eighteen hundred and sixty-six, entitled 'An act to facilitate the construction of the New York and Oswego Midland railroad, and to authorize towns to subscribe to the capital stock thereof.'" Its 1st section is as follows:

"Section 1. Section twenty-five of chapter three hundred and ninety-eight of the laws of eighteen hundred and sixty-six, entitled 'An act to facilitate the construction of the New York and Oswego Midland railroad, and to authorize towns to subscribe to the capital stock thereof,' is hereby amended so as to read as follows:

"§ 25. All real property within the corporate limits of any town assessed or liable to be assessed upon the assessment roll of such town at the time of issuing bonds by said town pursuant to this act, and all acts amendatory thereof, shall continue to be assessed and assessable for all purposes whatsoever in said town until said bonds, or any renewals thereof, are fully paid; and if the owner of such real property does not reside within said town, then such real prop-

erty shall be assessed as non-resident land, or to any occupant of said real property actually residing within said town."

If this section is in force it is practically conceded that the tax in question was legal. The town of Lebanon, in pursuance of the provisions of the act, subscribed to the capital stock of the railroad company in the sum of $125,000, and duly issued its bonds about June 1, 1868, and a portion of the bonds or renewals thereof are still outstanding. The real property in question was assessed or liable to be assessed in that town at the time of the issuing of the bonds.

The question whether the act of 1883 was repealed by the general act of 1886 was considered by the Appellate Division in the fourth department in the *Casterton* case, above cited, in a controversy between the towns of Verona and Vienna, and the conclusion was reached that the act of 1883 was not repealed. We should, I think, for the purposes of this appeal, follow that decision.

The constitutional question above referred to was, however, not considered, and that remains to be disposed of here. The argument on the part of plaintiff is that by the amendment of 1883 a new subject was added to the original act, and is not mentioned in the title of either act.

In *Matter of N. Y. & Long Island Bridge Co.* (148 N. Y. 540) it was held that, in submitting an amendatory act to the test of the constitutional provision here under consideration, the inquiry must be based upon the title of the original act. The question then here is whether the title, "An act to facilitate the construction of the New York and Oswego Midland Railroad, and to authorize towns to subscribe to the capital stock thereof," is broad enough to cover the provisions of section 25 in the amendatory act.

On the part of the plaintiff we are referred to the cases of *Coxe* v. *State* (144 N. Y. 396); *Astor* v. *Arcade R. Co.* (113 id. 93); *Johnston* v. *Spicer* (107 id. 187); *Matter of Paul* (94 id. 497); *Matter of Blodgett* (89 id. 392). In the *Coxe* case it was held that the title "An act to authorize the drainage of marsh land," was not sufficient to authorize a provision conferring upon the corporation organized under the act the right of property in the lands and dominion over the waters designated. In the *Astor* case, where the only subject suggested by the title of the act was the transportation of passengers and property through pneumatic tubes by atmospheric

pressure, it was held that the act was in violation of the constitutional provision in question, as it authorized the construction of underground railways by the corporation organized under the original act, with authority, upon obtaining the requisite consents, to propel its cars by steam or any other motive power, and thus to transform itself into a railroad corporation; and it was said by Judge EARL that "when the subject is expressed, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act and are germane to the title. The title must be such, at least, as fairly to suggest or give a clue to the subject dealt with in the act, and unless it comes up to this standard it falls below the constitutional requirement." In the *Johnston* case, the title of the act was "An act to release the interest of the people of the State of New York in certain real estate to Henry Spicer (and four others named) and for other purposes." By the 1st section all the interest of the State acquired by escheat in certain described real estate was released to the parties named. By the 2d section "all the right, title and interest of the people of this State in and to the personal property and effects of which Ellen Spicer died possessed" was released to the same parties. The act was held to be violative of the constitutional provision in question. In the *Paul* case it was held that the words "tenement houses" in the title of the act entitled "An act to improve the public health in the city of New York by prohibiting the manufacture of cigars and preparation of tobacco in any form in the tenement houses of said city," refer to a distinct class of houses recognized and defined by law, and the subject so expressed would not authorize legislation as to rooms or apartments in ordinary dwellings. Judge FINCH (at p. 506) recognizes a distinction in the construction of titles that are narrow and specific, and those that are so broad and general that a multitude of various details could be fairly deemed to be embraced within them. In the *Blodgett* case the title, "An act in relation to regulating and grading the Eighth avenue in the city of New York," was held not sufficient to admit of legislation authorizing the commissioners of public parks to change the grade of streets intersecting said avenue to conform to the grade thereof.

On the part of the defendants we are referred to other cases which are claimed to furnish support for the defendants' position. An act entitled " An act to enable the supervisors of the city and county of New York to raise money by tax," authorizes a provision that a certain portion of the tax for certain specified purposes shall be assessed upon a particular part of the city. (*Sun Mutual Ins. Co.* v. *Mayor, etc.*, 8 N. Y. 241.) In *Brewster* v. *City of Syracuse* (19 id. 116) it was held that the title " An act for the relief of James Ley & Son " was sufficient to include legislation conferring power on the common council of the city of Syracuse to assess, collect and pay to James Ley & Son, contractors, for the construction of a sewer in that city, a certain sum in addition to the contract price. It is said by JOHNSON, Ch. J. : " The degree of particularity with which the title of an act is to express its subject is not defined in the Constitution and rests in the discretion of the Legislature."

In *Matter of Mayer* (50 N. Y. 504), which related to an act entitled " An act in relation to certain local improvements in the city of New York," it was held that : " If the title of an act fairly and reasonably announces the subject, and that is a single one, and if the various parts thereof have respect or relate to that subject, the provision of the Constitution, that no local or private bill shall embrace more than one subject, and that shall be expressed in its title, * * * is complied with. The degree of relationship of each provision is not material if it legitimately tends to the accomplishment of the general purpose. The general subject of local improvements includes not only the plan and construction of contemplated work, but the means by which the work may be accomplished, the proceedings necessary to be adopted for assessing and paying the expenses and the remedies to parties for redress of grievances arising out of their construction." In *People ex rel. City of Rochester* v. *Briggs* (50 N. Y. 553) the title of the act under consideration was " An act to amend the several acts in relation to the city of Rochester." This was held comprehensive enough to embrace all the details of the city charter and government. In *Matter of Knaust* (101 N. Y. 188, 194) the title of the act was " An act relative to the powers and duties of the commissioners of Central Park," and it was said, " It expresses a general object, and it must now be considered as the settled rule of construction that, where such is the case, all matters fairly and rea-

sonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated * * * and are germain to the title."

There are other adjudications in the same direction. In *Mosier* v. *Hilton* (15 Barb. 657) the title of the act there in question was "An act for the relief of the creditors of the Lockport and Niagara Falls Railroad Company." This was held sufficient to cover legislation authorizing the sale of the real and personal estate and franchises of the company at auction, and declaring that the purchasers should be vested with all the rights and privileges of the corporation as fully and absolutely as they were possessed by the company, and that the purchasers might organize a new corporation with a new name and issue stock. In *Sharp* v. *Mayor*, etc. (31 Barb. 572), it was held that an act entitled "An act to enable the supervisors of the city and county of New York to raise money by tax," might contain a provision authorizing and requiring the comptroller to take all necessary means to open and reverse any judgments against the city which he had reason to believe were obtained by collusion or fraud. In *Phillips* v. *Covington & Cincinnati Bridge Company* (2 Metc. [Ky.] 219), referred to in the opinion in 50 New York, 564, the title of the act was "An act to amend the charter of the Covington and Cincinnati Bridge Company." By one of the sections of the act the bridge company was authorized to sell, and the city of Cincinnati to subscribe for, a large amount of the capital stock of the company, and in payment thereof to sell the bonds of the city and levy a tax for the payment of the interest. It was held that the act was not in conflict with a constitutional provision similar to the one under consideration here, and it was said that "none of the provisions of a statute should be regarded as unconstitutional where they all relate, directly or indirectly, to the same subject, have a natural connection, and are not foreign to the subject expressed in the title." In Cooley on Constitutional Limitations (6th ed. 172, 173) the general doctrine is laid down as follows: "The generality of a title is, therefore, no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. The legislature may determine for itself how broad and comprehensive

shall be the object of a statute, and how much particularity shall be employed in the title defining it."

Under this condition of authority it may, I think, be fairly said that the subject expressed in the title may be a general one, and that in such a case all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act and are germane to the title. By the original act provision was made for the appointment of commissioners in any town in either of the counties named in the act, one of the counties named being the county of Madison. These commissioners, upon obtaining the written consent, duly acknowledged, of a majority of the taxpayers of the town owning or representing more than one-half of the taxable property of the town assessed and appearing upon the assessment roll of the year 1865, which consent should be obtained within two years after the passage of the act, were authorized in the name of the town to subscribe for and purchase the stock of the railroad company to the amount named in the consent and pay for the same with money loaned by them upon the credit of the town. For the money loaned they were authorized to issue bonds. It was provided that, by virtue of such subscription, the town acquired all the rights and privileges of other stockholders; that the dividends upon the stock should be applied upon the interest of the bonds, and that in case the dividends should not be sufficient to pay the interest and principal as it should accrue, the deficiency should, through the action of the board of supervisors, be assessed and collected upon the real and personal estate of the town in the same manner as other taxes are assessed and collected. The commissioners were authorized to exchange the stock in whole or in part for the bonds, and might sell the stock, but at not less than par, except upon written consent of the majority of the taxpayers appearing upon the last assessment roll.

By section 25, as added in 1883, it was in substance provided that the real property within the town, assessed or liable to be assessed at the time of issuing the bonds, shall continue to be assessable for all purposes in said town until the bonds are paid. This, in effect, so far as the real estate was concerned, continued the burden and the benefit, if any, as they existed at the time of the issuing of the bonds and at the time when the town, by a majority in number and

amount of its taxpayers, decided to impose the burden and take any benefit that might arise from the ownership of the stock or the building of the road. It was in a certain sense a business enterprise assumed by the town upon authority of its assessed property as then existing; and it might well be said that the constituency which initiated the undertaking should carry it through, and that any owner of real estate, by change of residence to adjoining property in another town, should not avoid the burden or lose the possible benefit. This was a matter connected with the peculiar transaction in which the town was a party, and it might properly be considered in working out the detail of the subject of the act. The power or right to subscribe for stock necessarily involved a provision for means to pay for it and ordinarily a loan on credit of the town. A provision that the security should remain as it was when the loan was made would be germane to the object of the act.

If section 25, as it now stands, had been a part of the original act, it would, I think, have been within the reasonable scope of the subject named in the title and not subject to constitutional criticism. That being so, it should not now be deemed invalid. In 1882, when the plaintiff bought the property, it was assessable in the town of Lebanon, and there was no change in the general law till 1886. The plaintiff, when he bought, presumptively knew that the property was assessable in that town in 1868, when the bonds were issued; that the bonds had been issued under the act of 1866 and were unpaid. He took the risks of any amendment of that act within its original scope and purpose.

It follows that section 25 was in force when the assessment against plaintiff was made by defendants, and the plaintiff has no cause of action against them.

All concurred.

Judgment affirmed, with costs.