JOSEPH K. CASTERTON, Individually and as Executor and Trustee, etc., of THOMAS CASTERTON, Deceased, Respondent, *v.* THE TOWN OF VIENNA, Appellant, and THE TOWN OF VERONA, Respondent, Impleaded with Others.

*Taxation of land — in which of two adjoining towns, one of which has been bonded in aid of a railroad, it should be assessed — general and special statutes — repeal.*

A general statute does not repeal a special one relating to the same subject, unless the general statute is a codification of the law relating to the subject, or expressly or by clear implication repeals the special statute.

Chapter 21 of the Laws of 1883, amending chapter 398 of the Laws of 1866, known as the Midland Bonding Act, and providing that all real property within the corporate limits of any town assessed, or liable to be assessed, upon

the assessment roll of such town, at the time when bonds of the town were issued under the act, shall continue to be assessed for all purposes in said town until the bonds or any renewals thereof are fully paid, and that if the owner of such real property does not reside within said town, the property shall be assessed as non-resident land, or to any occupant of such real property actually residing within said town, was not repealed by chapter 315 of the Laws of 1886, nor by chapter 908 of the Laws of 1896.

Green, J., dissented.

Appeal by the defendant, The Town of Vienna, from portions of a judgment of the Supreme Court in favor of the plaintiff and the defendant The Town of Verona, and against The Town of Vienna, entered in the office of the clerk of the county of Onondaga on the 13th day of January, 1896, upon the decision of the court, separately stating the facts found and the conclusions of law, rendered after a trial at the Oneida Special Term.

*Howard C. Wiggins,* for the Town of Vienna, appellant.

*William A. Matteson,* for the Town of Verona, respondent.

*Bliss & Briggs,* for the plaintiff, respondent.

Follett, J. :

This action was begun March 19, 1895, to have it determined whether seventy-nine acres of land, owned and occupied by the plaintiff, and situate in the town of Vienna, were assessable for taxes in that town or in the town of Verona.

The towns of Vienna and Verona adjoin each other and are in the county of Oneida.

In 1869, three adjoining parcels of land, aggregating 174 acres, situate in the town of Verona, were united in ownership and were thereafter occupied by the owner as a single farm, which land has always been and now is assessed for taxes in that town. April 1, 1871, the owner of the 174 acres, the plaintiff's ancestor, purchased 79 acres of land in the town of Vienna, adjoining the 174 acres, which 79 acres had always theretofore been assessed in the town of Vienna. Since April 1, 1871, these four parcels of land, amounting to 253 acres, have been occupied by the owner as one farm, the dwelling and farm buildings being upon that part of the farm situate in the town of Verona. In the years 1891 to 1894 inclusive the seventy-nine acres were assessed in both towns, and the owner has

paid double taxes on that parcel, each town claiming the right to assess it. The plaintiff is indifferent which town his land is assessed in, but desires that it be determined in which town it is legally assessable so as to avoid the payment of taxes in both towns. This action was brought for that purpose, and the towns answered separately, each claiming to be entitled to assess the property. Which town is entitled to assess the seventy-nine acres is the only question involved in this appeal. At Special Term it was held that the seventy-nine acres were assessable in the town of Verona, and a judgment accordingly was ordered in favor of the plaintiff, with costs against the town of Vienna.

Between April, 1866, and August, 1870, one city, three villages and thirty-nine towns in the counties of Oswego, Oneida, Madison, Chenango, Cortland, Delaware, Ulster and Orange subscribed and paid for $5,856,800 of the capital stock of the New York and Oswego Midland Railroad Company, as authorized by chapter 398 of the Laws of 1866 and the acts amendatory thereof and supplementary thereto. To provide the means to pay for the stock, the bonds of the several municipalities were issued, and, although the stock became substantially valueless, to their credit it should be said that only one municipality contested the payment of its bonds, which town, however, ultimately paid and secured to be paid the whole amount of its bonds with a small abatement of interest in arrears. The greater part of the bonds of these municipalities has been paid, and the remainder was refunded when the original bonds became due. This record of municipal integrity is believed to be unequalled in the history of municipal bonding for the construction of railroads.

Among the towns bonded was Vienna, which, in January, 1868, issued bonds to the amount of $68,500, which was invested in the stock of the railroad. These bonds ran twenty years and became due in January, 1888, at which time the town had paid $13,500 of its debt, leaving outstanding $55,000, which were refunded pursuant to chapter 316 of the Laws of 1886; $2,000 of said renewal bonds matured each year for the first five years, and $3,000 each year for the next fifteen years, so that the last installment of said renewal bonds will not become due and payable until January, 1908.

When Vienna issued its bonds, the seventy-nine acres were assessable in that town, and so remained until April 1, 1871, when the

land became part of the farm of the ancestor of the plaintiff, and then it became taxable in the town of Verona pursuant to section 4 of article 1 of title 2 of chapter 13 of part 1 of the Revised Statutes, which provided :

"§ 4. When the line between two towns or wards divides a farm or lot, the same shall be taxed, if occupied, in the town or ward where the occupant resides; if unoccupied, each part shall be assessed in the town in which the same shall lie, and this whether such division line be a town line only or be also a county line."

By chapter 287 of the Laws of 1871 this section was amended so that it read as follows :

"§ 4. When the line between two towns or wards divides a farm or lot the same shall be taxed, if occupied, in the town or ward where the occupant resides; except when such town line shall be also a county line, in which case each part shall be assessed in the town in which the same shall be situated in the same manner as unoccupied lands are now assessed."

By chapter 355 of the Laws of 1872 chapter 287 of the Laws of 1871 was repealed, and with it fell the section of the Revised Statutes first above quoted. (*People* v. *Supervisors,* 67 N. Y. 109 ; *Harris* v. *Supervisors,* 33 Hun, 279 ; *Hampton* v. *Hamsher,* 46 id. 144 ; affd., 124 N. Y. 634.)

May 11, 1886, an act entitled "An act to amend the Revised Statutes," being chapter 315 of the laws of that year, was passed, which provided as follows :

"Section 1. Article one of title two of chapter thirteen, part one, of the Revised Statutes, is hereby amended by inserting immediately after section three thereof the following, which shall be known as section four.

"§ 4. When the line between two towns, wards or counties divides a farm or lot, the same shall be taxed, if occupied, in the town, ward or county where the occupant resides; if unoccupied each part shall be assessed in the town, ward village or county where the same shall lie.

"§ 2. All acts or parts of acts inconsistent with this act are hereby repealed.

"§ 3. This act shall take effect immediately."

From April 24, 1872, when chapter 287 of the Laws of 1871 was repealed, until May 11, 1886, when the last act above quoted was passed, there was no general statute in this State providing that farms situated partly in one town and partly in another were assessable in towns other than those where the lands were situated, so that all lands were assessable in the town where situated, pursuant to sections 1 and 2 of article 1 of title 2 of chapter 13 of part 1 of the Revised Statutes. Permitting lands situated in one town to be assessed in another town is, and always has been, an exception to the general statutes regulating the assessment of realty.

By chapter 152 of the Laws of 1882 chapter 398 of the Laws of 1866 — the Midland Bonding Act — was amended by adding thereto this section :

" § 25. All real property assessed or liable to be assessed upon the assessment roll of any town at the time of issuing bonds by said town pursuant to this act and all acts amendatory thereof, shall continue to be assessed and assessable for all purposes whatsoever in said town until said bonds, or any renewals thereof, are fully paid, and if the owner of such real property does not reside within said town, then such real property shall be assessed as non-resident land or to any occupant of said real property actually residing within said town."

The section last quoted was found to be unjust in its operation, for it provided that land assessed in a bonded town when it was bonded, whether in or out of the town, should continue to be assessable therein until the bonds were paid, so that in case a farm partly in a bonded town and partly in an unbonded one was afterwards divided, and the part in the bonded town owned by one proprietor and the part in the unbonded town by another proprietor, the land of the latter was assessable in the bonded town. To remedy this defect section 25 was amended by chapter 21 of the Laws of 1883, so that it reads as follows :

" § 25. All real property within the corporate limits of any town assessed or liable to be assessed upon the assessment roll of such town at the time of issuing bonds by said town pursuant to this act, and all acts amendatory thereof, shall continue to be assessed and assessable for all purposes whatsoever in said town until said bonds, or any renewals thereof, are fully paid ; and if the owner of such

real property does not reside within said town, then such real property shall be assessed as non-resident land or to any occupant of said real property actually residing within said town."

The last two statutes were passed to prevent the owners of farms in bonded towns adjoining the line of unbonded towns from purchasing a few acres in the latter town and removing their residences into the unbonded towns, and thus escaping taxation in the bonded towns. · This practice, though not common, was occasionally resorted to, and sometimes by persons who had been active in bonding their towns.

The counsel for the town of Verona contends that chapter 21 of the Laws of 1883 was repealed by chapter 315 of the Laws of 1886. On the other hand, the counsel for the town of Vienna asserts that chapter 21 of the Laws of 1883, being a local act, was not repealed by chapter 315 of the Laws of 1886.

The judgment of the Special Term is rested on the effect of the 2d section of chapter 315 of the Laws of 1886, above quoted. I am of the opinion that, under the decisions in this State and of other States, no such effect should be given to that section. A general statute does not repeal a special one relating to the same subject, unless the general statute is a codification of the law relating to the subject, or expressly or by clear implication repeals the special statute. Chapter 315 of the Laws of 1886 is not a codification of the laws relating to taxation, but simply restores the statute relating to the assessment of farms divided by town lines.

There is now the same reason for the special statute relating to the method of assessing farms in bonded towns as when chapter 21 of the Laws of 1883 was passed, and the reason will exist until the bonds are paid. The statute is eminently an equitable one, for it merely provides that the property which assumed the burden of aiding in the construction of the railroad shall not be allowed to escape therefrom, and thus increase the burden borne by farms which do not adjoin town lines.

It seems to me that *Whipple* v. *Christian* (15 Hun, 321; affd., 80 N. Y. 523) is decisive of the question involved. That case arose out of the following statutes : By chapter 305 of the Laws of 1844, an act was passed entitled. "An act for the better security of mechanics and others erecting buildings and furnishing materials

therefor, in the several cities in this State (except the city of New York) and in the villages of Syracuse, Williamsburgh, Geneva, Canandaigua, Oswego and Auburn."

By chapter 402 of the Laws of 1854 an act was passed entitled "An act for the better security of mechanics and others erecting buildings in the counties of Westchester, Oneida, Cortland, Broome, Putnam, Rockland, Orleans, Niagara, Livingston, Otsego, Lewis, Orange and Dutchess."

By chapter 204 of the Laws of 1858 the last-mentioned statute was extended and declared to be applicable to all the counties of this State, except the counties of New York and Erie. By the 2d section of this act it was provided:

"§ 2. All acts and parts of acts inconsistent with this act are hereby repealed."

The question arose whether this repealing clause repealed chapter 305 of the Laws of 1844, and it was held that it did not. The court said: "Neither the act of 1854 nor that of 1858 referred in terms to the act of 1844, and neither can be so construed as to impair the force of its provisions, unless we depart from the well-settled rule that a special act will not be deemed repealed by implication in consequence of the passage of a general law containing a general repealing clause of inconsistent legislation."

The same rule is declared in *The Matter of the Evergreens* (47 N. Y. 216); *Matter D. & H. Canal Co.* (69 id. 209), and *Village of Gloversville* v. *Howell* (70 id. 287).

*Whipple* v. *Christian* (*supra*) has never been doubted or questioned in this State, and it is in harmony with the decisions of other States. (*State* v. *Branin*, 3 Zab. 484; *State* v. *Clarke*, 1 Dutch. 54; *Mayor* v. *Freeholders*, 40 N. J. Law, 595; End. Interp. Stat. § 223; Cooley on Tax. 294.)

In *Lewis* v. *City of Syracuse* (13 App. Div. 587; 43 N. Y. Supp. 455) this court applied the same rule to a special statute relating to the city of Syracuse.

It is urged that the Legislature must have intended to have repealed some statute by the repealing clause in chapter 315 of the Laws of 1886, and there was no other statute relating to the same subject except the Midland act. Chapter 342 of the Laws of 1883 provided for the assessment of property divided by the boundary

line of a town or city which passed through any dwelling house, and a careful examination may disclose other special acts relating to the assessment of property divided by town, city or county lines. So far as we know it has never been contended that this last act was repealed by the repealing clause under consideration.

Whatever force there may be in legislative construction supports the contention of the town of Vienna. After this cause was tried and a judgment entered the Legislature revised and codified the tax laws of this State, which became chapter 908 of the Laws of 1896, the 10th section of which makes provision for the assessment of realty divided by the boundary line of a tax district. The case of the towns bonded in aid of the Midland road is not covered by the section. More than 150 general and local statutes relating to the subject of taxation are enumerated in the schedule of laws repealed, but neither chapter 152 of the Laws of 1882 nor chapter 21 of the Laws of 1883 is repealed. So far as I have been able to examine them they contain general and special provisions, which, being provided for by chapter 908 of the Laws of 1896, the general and special acts were expressly repealed, but the provisions in respect to the Midland towns not being provided for, the Midland acts were not repealed.

It seems to me that the Legislature intended that the Midland acts should continue in force and provide the rule for the assessment of farms divided by town lines.

It can hardly be said that the failure to repeal the Midland acts was an oversight, for one of the revision commissioners long practiced law in one of the bonded towns, and in a county wherein there are several bonded towns, and it cannot be presumed that he was ignorant of these acts.

In my opinion, chapter 21 of the Laws of 1883 was not repealed by chapter 315 of the Laws of 1886, but that it is still in force, and that the seventy-nine acres should be assessed in the town of Vienna.

There being no dispute about the facts, a retrial of this action is unnecessary.

The judgment should be reversed, with costs in this court and in the court below in favor of the town of Vienna and against the town of Verona, and the plaintiff's costs in the court below and his

disbursements on this appeal taxed and recovered against the town of Verona.

All concurred, except GREEN, J., dissenting.

GREEN, J. (dissenting):

The only question presented is, whether the special statute was repealed by the subsequent general statute.

The special and general acts under discussion dealt *with precisely the same subject,* so that it would seem that the Legislature, when it passed the general law, had in mind the subject with which the prior law dealt. When the old rule was re-enacted by the Laws of 1886, the Legislature, *by a separate and independent section,* added a repealing clause of all other acts or parts of acts inconsistent therewith. There is no statute, or part of a statute, to which this repealing clause could possibly relate, except the special act in question. The Legislature, therefore, in taking pains to add to the act, in an independent section, the repealing clause, undoubtedly intended to repeal something. The only act then in existence bearing upon the subject which was then in the mind of the Legislature was this special act. We cannot avoid this conclusion by saying that the Legislature usually adds a repealing act; it very frequently omits to add such an act. It cannot be that this plain provision of the statute can be avoided on the plea that the Legislature meant nothing in enacting this provision of the statute, but that it was enacted because of a custom of the Legislature to enact just such provisions, intending that they should be without force or effect. The plain intention of the Legislature is clearly expressed in the repealing section, and it should have great weight in determining the question of the intention of the Legislature. Full force and effect to the general statute, in every part of the State, except in towns bonded in aid of the railroad, would have been given without the addition of the repealing clause. If, however, the Legislature intended that the general act should apply to towns situate as the appellant is, then this repealing clause was necessary, in order to remove the special act.

The special act created no system; it provided only *in what towns* certain parcels of land should be assessed; but the *system for assessing* the same was provided by the Revised Statutes, and

that system was uniform throughout the State. The special act was not part of a system of local administration; no such system was created by it. The Revised Statutes provided the only system for assessing lands; and, under that system, the parcel of land in question must have been assessed, no matter in what town the same was assessable.

No reasonable motive for retaining the special act, notwithstanding the passage of the general act, can be assigned. *Under the special act all lands within the corporate limits of Vienna are subject to assessment, although the owner resides in Verona,* while under the general act, lands situated outside the limits of Vienna may be assessed in that town, if the owner resides there. Are not the two cases inconsistent? Counsel for Vienna does not take the position that the act of 1882–1883 would prevent assessment of lands in Verona when the owner resides in Vienna. The result is, we have two inconsistent rules on the same subject-matter.

The railroad makes no objection. The special act, passed long after the issue of bonds, was not a *contract* between the State and the town which would preclude the State from restoring the original system or rule of assessment, although the result of the operation of the rule would be, to absolve some lands in the bonded town from liability to assessment in that town. Besides, the general act may also work to the advantage of the bonded town and to the detriment of the other. That town is claiming too much; it insists upon the application of the general act where it would work to its advantage, and repudiates its application where it would operate to its detriment, and then claims the special act must govern.

I am of the opinion that Justice VANN* properly disposed of the

---

* The following is the opinion of Justice VANN, above referred to:

VANN, J.:

Upon the trial there was no substantial contention between the plaintiff and the defendants, as the right of the former to maintain this action which is in the nature of an interpleader was virtually conceded. A sharp controversy, however, arose between the two towns, each of which, by the service of a cross-answer upon its adversary, sought to have a final determination as to which of said two towns had the legal right to assess the land of the plaintiff lying in the town of Vienna.

The decision of this question requires a review of legislation extending over a long period, in relation to the assessment and collection of taxes where farms are divided by town lines.

The earliest statute that I find upon the subject is chapter 35 of the Revised

case on the trial, and that his opinion correctly states the law govern-
ing the disposition that should be made of this case.

The judgment should be affirmed, with costs.

Judgment reversed, with costs in this court and in the court
below in favor of the plaintiff, and in favor of the town of Vienna
against the town of Verona.

CHARLES H. KEEP and Others, Appellants, *v.* MAURICE G. WALSH
and Others, Respondents.

*Negligence — liability of the master for the acts of his servant — when a negligent
unauthorized act is within the scope of the employment.*

In an action brought by the owners of a store to recover the value of a plate
glass window broken by one of the defendants' clerks with a handcart which he
had borrowed, without the authority or knowledge of the defendants, for the
purpose of moving some of the latters' goods, the court charged the jury
that it was necessary to a recovery by the plaintiffs that they should find that
the clerk was acting under the instructions of the defendants, or that he was
acting independent of any directions previously given, but that his acts became

Laws, passed in 1813, by the 22d section of which (2 R. L. 135) it was provided
"That where any line of any town in this State shall intersect a farm, the pos-
sessor of such farm shall pay all his taxes for such farm in the town where his
dwelling house shall be."

The statute remained in this form, so far as my researches have enabled me to
discover, until 1823, when, by chapter 262, section 8, of the Laws of that year, it
was provided "That where the line between two towns divides any occupied lot
or farm, the same shall be taxed in the town where the occupant lives, provided he
or she lives on the lot; but if no person resides on the lot or farm, as an occupant or
owner, then the assessors of the respective towns may each of them tax the parts in
their several towns, to the person owning the same, though he or she may live in
another town, and may collect the tax by the sale, according to this act, of any
property of the said owner, which may be found on the premises; and in case no
such property can be found, it may be returned as non-resident lands."

The law as it thus stood received consideration in *Saunders* v. *Springsteen* (4
Wend. 429), where it was held that if a person occupies one entire farm, and a
division line between two adjoining towns passes through the same, such farm
can be assessed for taxes only in the town where the owner or occupant resides,
although the farm comprises portions of different lots, and such lots lie in differ-
ent towns. (See, also, *Ward* v. *Alyesworth*, 9 Wend. 281.)

No further change appears to have been made in the statute until 1827–1828,
when the Revised Statutes were first enacted, and the rule was prescribed in this

known to the defendants and were approved during the time that he was engaged in the service and before he attempted to return the cart.

*Held,* that the charge was erroneous :

That the test of the liability of a master for a negligent act of his servant depends upon the question whether the servant is acting within the scope of his employment and in the business of the master, and that if the motive which prompted the act and the purpose sought by it, are within the scope of the servant's employment and in the business of the master, and are not independent of or outside of his employment or disconnected with the master's business, the master is liable for the act.

APPEAL by the plaintiffs, Charles H. Keep and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Niagara on the 24th day of July, 1896, upon the verdict of a jury, and also from an order entered in said clerk's office on the 14th day of August, 1896, denying the plaintiffs' motion for a new trial made upon the minutes.

Plaintiffs are the owners of a store known as No. 99 Main street, in the city of Lockport; it was leased by them to the American Express Company, and was occupied by the company on July 22, 1895. The defendants occupied a double store, Nos. 94 and 95, on the same street, and were there carrying on a retail dry goods busi-

---

form: "When the line between two towns or wards divides a farm or lot, the same shall be taxed, if occupied, in the town or ward where the occupant resides. If unoccupied, each part shall be assessed in the town in which the same shall lie; and this whether such division line be a town line only or be also a county line." (1 R. S. [1st ed.] 389, § 4.)

No change appears to have been made in the Revised Statutes so far as the section quoted is concerned, until 1871, when that section was amended by chapter 287 of the Laws of 1871, so as to read as follows: "When the line between two towns or wards divides a farm or lot, the same shall be taxed if occupied, in the town or ward where the occupant resides, *except when such town line shall be also a county line,* in which case each part shall be assessed in the town in which the same shall be situated, in the same manner as unoccupied lands are now assessed."

The last-named act was repealed by chapter 355 of the Laws of 1872, and no legislation was substituted for it. According to the familiar rule, a repeal of the amendatory act does not revive the original act, but both fall together; so that this left the State without any statutory rule upon the subject. (*People ex rel. Canajoharie Nat. Bank* v. *Supervisors,* 67 N. Y. 109. *Harris* v. *Supervisors,* 33 Hun, 279, 282; *Hampton* v. *Hamsher,* 46 id. 144.)

As said by the court in the case last cited, the Legislature doubtless did not intend this result, but, however that may be, it proceeded, by chapter 315 of the Laws of 1886, to re-enact section 4 of the Revised Statutes, so repealed, by pro-

ness on the last-named date. They had purchased another stock of
goods then located in a store sixty feet distant from their store and
on the same side of the street. The defendants had in their employ
a number of clerks, among whom was Fred J. Conniff. The clerks
and employees of defendants were directed to move the stock of
goods so purchased to the stores occupied by defendants, and to
move it by hand. One handcart was procured and furnished by
defendants to be used in moving the stock and fixtures when found

---

viding that "When the line between two towns, wards or counties divides a
farm or lot, the same shall be taxed, if occupied, in the town, ward or county
where the occupant resides; if unoccupied, each part shall be assessed in the
town, ward, village or county where the same shall lie.

"§ 2. All acts or parts of acts inconsistent with this act are hereby repealed."

This is the statute now in force, and is the rule which governs the decision of
this case, unless certain other statutes passed in aid of the construction of the
Midland railroad, so called, prescribe a different rule for the town of Vienna.

In 1866 an act was passed authorizing said town, with others, to subscribe to
the capital stock of said railroad, and to issue bonds therefor; and in 1868 said
town was duly bonded according to the provisions of that act for the sum of
$68,500. (Laws 1866, chap. 398.)

This act does not purport to place an actual lien upon the lands of the bonded
town, but requires the board of supervisors to cause to be assessed, levied and
collected upon the real and personal property of the town in the same manner as
other taxes are assessed, levied and collected, sufficient moneys for the redemp-
tion of the bonds and interest. These bonds matured in 1888 and were renewed
pursuant to chapter 316 of the Laws of 1886 to the amount of $55,000; and when
this action was commenced renewal bonds to the amount of $42,000 were out-
standing, and at the time of the trial $39,000 of the same had not yet matured
and were unpaid.

By chapter 152 of the Laws of 1882 the original bonding act of 1866 was
amended by adding thereto the provision that "all real property assessed or
liable to be assessed upon the assessment roll of any town at the time of issuing
bonds by said town pursuant to this act and all acts amendatory thereof, shall
continue to be assessed and assessable for all purposes whatsoever in said town
until said bonds or any renewals thereof are fully paid; and if the owner of
such real property does not reside within said town, then such real property
shall be assessed as non-resident land or to any occupant of said real property
actually residing within said town."

Chapter 21 of the Laws of 1883 made a slight change, but it is not material to
this controversy.

Thus it appears that from an early period in the history of the State until 1872
there was a uniform, just and convenient rule governing the subject under con-
sideration. While the statute was occasionally changed, the variations were
slight and tended to perfect the rule in the interest of justice and convenience.

necessary. The clerk Conniff, without the direction, authority or knowledge of the defendants, went across the street and borrowed a handcart of the American Express Company and with it moved a showcase which was a part of the stock and property purchased by defendants which was to be moved to their store, and then returned the cart to the express company; and, while returning the same, broke a plate glass window in plaintiffs' building with the cart. The defendants gave Conniff no direct authority to borrow the

---

The rule was just, because taxation was authorized in the town where the occupant and his family resided, where the buildings and personal property were situated, and where the persons and property for the protection of which taxes are in the main necessary, lived and was located. The convenience of the rule is obvious, as it enables the owner or the occupant to pay but one bill of taxes instead of two, and to make the payment at a place presumptively nearer his own home.

The rule was in force when the act authorizing the bonding of towns in aid of the Midland railroad was passed, as well as when the bonds were issued by the town of Vienna for that purpose. When the bonds were issued, therefore, the method of assessing a farm lying partly in the town of Vienna and partly in an adjoining town was prescribed by the Revised Statutes as above stated. After the repealing act of 1872, for the period of ten years, there seems to have been no rule prescribed by statute to regulate the method of assessment in such cases. In that year no general rule was provided by the Legislature, but a special rule applicable to those towns which had issued bonds under the enabling act of 1866, to help build the Midland road. This was an innovation upon what until 1872 had been the established policy of the State.

The act of 1883, under which the town of Vienna claims the right to assess the lands of the plaintiff which lie in that town, limited the operation of the act of 1882 to lands within the corporate limits of the town, thus correcting an unfortunate oversight resulting in obvious injustice. If, when the town of Vienna was bonded, a person owned a farm lying partially in that town and partially in an adjoining town, but with the farm buildings in the former, and afterwards sold all of the farm except that portion situated in the town of Vienna to a person living outside of that town, according to the act of 1882 the land thus sold would still be assessable in Vienna. The act of 1883, however, removed this evil, as already pointed out.

From 1872 to 1886 there was no general rule governing the taxation of a farm situated in two towns; but in that year the old rule of the Revised Statutes was restored; and not only that, but all acts or parts of acts inconsistent with that rule were repealed. The town of Verona relies upon this act in claiming the right to assess the entire farm in that town; so that the real question presented for decision is whether the repealing clause in the act of 1886 applies to the act of 1883 with reference to assessing farms where a part of the land was situated in a town bonded under the Midland Railroad act.

American Express Company's cart and knew nothing about Conniff's borrowing or using it.

*Taylor & Nicholls,* for the appellants.

*P. F. King,* for the respondents.

GREEN, J:

The learned trial justice charged the jury that in addition to proving damage and the negligence of defendants' servant in causing same, " The plaintiff must establish more than those facts in order

The learned counsel for the town of Vienna claims that the object of the Legislature was simply to restore the old rule of the Revised Statutes that had been inadvertently repealed. On the other hand, the position of the learned counsel for the town of Verona is that the object of the Legislature was not only to restore the old rule, but to wipe out all legislation inconsistent therewith, so as to make the rule uniform in its operation throughout the entire State.

The general rule is that a special statute, providing for a particular case, as applicable to a particular locality, is not repealed by a statute general in its terms and application, unless the intention of the Legislature to repeal or alter the special law is manifest, although the terms of the general act would, if strictly construed, but for the special law, include the case or cases provided for it. (*Buffalo Cemetery Association* v. *City of Buffalo,* 118 N. Y. 61; *McKenna* v. *Edmundstone,* 91 id. 231, 233; *Aldinger* v. *Pugh,* 32 N. Y. St. Repr. 513; S. C., 57 Hun, 181.) But, as said by Judge ANDREWS in *The People* v. *Jaehne* (103 N. Y. 182, 194): " It will be found, I think, on examining the cases in which the courts have held that a special law was not repealed by a subsequent general law on the same subject, that they are as a general rule cases where the Legislature was not dealing directly with the subject of the prior law, and it was not in the mind of the Legislature when the general law was enacted, or where the special law was part of a system of local administration, or where it was possible to assign a reasonable motive for retaining the special and peculiar provisions of the special act, notwithstanding the enactment of a subsequent general rule covering the same subject."

The general act upon its face had two objects to accomplish: *First,* to restore the old rule of the Revised Statutes, and, *second,* to repeal some acts or parts of acts then in force that were inconsistent with the general act. What is the Legislature presumed to have had in mind when it passed the general act? Clearly, the subject of a farm situated partly in one town and partly in another, with all the buildings in the town where the occupant resides. It had under consideration the question of how farms divided by town lines should be assessed. That was the subject also of the special act, only it was confined to particular towns. Both acts dealt with the same subject, and hence it cannot be presumed that the Legislature, when it passed the general, did not have the special act in mind. Moreover, there is no reason that I can conceive of for adding the repealing clause by a separate and independent section, unless it was intended to apply to the act

to justify you in reaching a conclusion adverse to that of the defendants. It must appear that the servant was acting under the instructions of the defendants, or that he was acting independent of any direction previously given, but that the acts of the servant became known to the defendants and were approved during the time that he was engaged in the service and before he attempted to. return the truck to the American Express Company's office."

To this the plaintiffs' counsel excepted, and in that connection asked the court to charge " that all those elements were not necessary ; that if he was given general instructions to remove those

of 1882 as amended in 1883. The Legislature obviously intended to repeal something by that clause. What was it unless it was the act of 1882, as amended in 1883? No other act has been called to my attention that is inconsistent with the general act. The Legislature, when about to restore the command to assess where the occupant resides, found a special act where the command was to assess where the land is situated, and, in restoring the former, intended, as I think, by the general repealing clause, to do away with the latter. This is not a case where the Legislature lays down a rule for the entire State, apparently without any repealing clause. There, if there is any repeal, it is by implication; that is, without special reference to the acts repealed. The object in the case in hand was to restore the old rule in its integrity, and to do away with the innovation and encroachment that had been made upon that rule. There is no injustice in this, because in the long run there would be as much land situated in one town, but not taxed there, as in the other; but there would be injustice in letting the general and special acts both stand at the same time, because a farm situated as the plaintiff's is would be taxable in Vienna as to the part located there, by virtue of the special act, while a farm located in both towns, but with the buildings located in Vienna and the occupant residing there, would be taxable as an entirety, including that part situated in Verona, by virtue of the general act. In this way both rules would operate to the advantage of one town only, while neither rule would protect the other town in any way whatever. It is not reasonable to suppose that the Legislature intended such a one-sided rule. None of the reasons mentioned by Judge ANDREWS in the quotation above made from his opinion exist in this case, and no reasonable motive has been assigned for retaining the special act, notwithstanding the passage of the general act covering the subject. I think the special act was repealed by the general act, and the following authorities are cited in support of that position: *People ex rel. Vanderveer* v. *Wilson* (125 N. Y. 368); *Cromwell* v. *MacLean* (123 id. 484); *Anderson* v. *Anderson* (112 id. 111); *People* v. *Gold & Stock Tel. Co.* (98 id. 75); *Heckmann* v. *Pinkney* (81 id. 211); *City of Buffalo* v. *Neal* (67 N. Y. St. Repr. 15; S. C., 86 Hun, 76).

The point is made in behalf of the town of Vienna that, if the general act repeals the special act, the former is unconstitutional, because it impairs the obligation of a contract. This position is based upon the act of 1882, which provided that all the property assessed or liable to be assessed in a town bonded in aid of

---

the Midland railroad at the time the bonds were issued should remain assessable for all purposes in that town until those bonds or the renewals thereof were fully paid.

The bonds constituted neither a general nor specific lien upon any land in the town of Vienna. There was simply the requirement that the bonded towns should assess and collect, the same as other taxes are assessed and collected, enough money to pay the principal and interest of the bonds and the renewals thereof as they became due. How are other taxes assessed? Clearly, as provided by the Revised Statutes. There is no difference in the method of raising money for that special purpose as compared with the money raised for general purposes. Whatever property is assessable for one purpose is assessable for the other. The town was bonded and the bonds were issued in contemplation of the provisions of the Revised Statutes as to the manner of assessing lands, and in contemplation of the right of the Legislature to change the method of assessment if it saw fit. The same rule is now in force that existed when the bonds were issued, and so long as there is no distinction between the method of raising money for general purposes and the method of raising money to pay the bonds and the interest thereon, no right either of the town or of the bondholders will be impaired. After the bonds had been issued and sold the act of 1882 was passed, not because there was any relation existing between the railroad or the bondholders and the bonded towns which required its passage, for there is nothing in the bonding act which even suggests it. The acts of 1882 and 1883 were not necessary to protect the rights of any party to the bonding contract. They were passed sixteen years after all rights in reference to the bonding of the towns were fixed and vested. I can see no reason, therefore, for holding that the legislation in question is unconstitutional.

There must be judgment in favor of the plaintiff for the amount paid by him under compulsion and without right to the town of Vienna, and settling, so long as the present circumstances exist, the rule of taxation in accordance with the views herein expressed. The plaintiff should also recover costs against the town of Vienna. Findings and a decree may be prepared accordingly, and if not agreed upon as to form, settled upon the usual notice.