Upon the trial, then, as in his complaint, the plaintiff sought to sustain his title, not by reason of a gift, but on the theory, as already pointed out, of an assignment. The memorandum is undoubtedly strong corroborative evidence of intention on the part of Levy to give the plaintiff the benefit of some or all of the money in the bank, after his death, and would have been entitled to great consideration in support of such a claim, had that from the outset been consistently asserted and substantiated by other satisfactory evidence. But as the complaint alleged that the bank book and the moneys represented thereby had been assigned to the plaintiff, and this allegation was not sustained, and no motion was made to amend the pleadings or conform them to the proof, the court might very properly have dismissed the complaint. The court, however, on the theory of a gift causa mortis, further considered the merits of the action without any change being made in the complaint; and, it appearing that the evidence of such a gift was conflicting and contradictory, it was entirely within the province of the court to pass upon the credibility of the witnesses in determining whether any title was so established. In his conclusion the learned trial judge had in mind the rule of law, so often formulated, that, where it is sought to divert the money or property of a deceased person from his relatives or next of kin, the stranger thus seeking to obtain benefit must establish his right by clear and convincing proof. When we consider the character of the witnesses, and their relation to the parties, we must conclude that the evidence is as consistent with the claim that the gift was not made as with the claim that it was made; and the many contradictions in the testimony raise the suspicion that no gift was actually made, but that an examination of the account book after Levy's death disclosed the memorandum, which, being favorable to the plaintiff, suggested to him the idea that, with it as a basis, a claim or right of some kind could be maintained. From a perusal of the record, we are unable to conclude that the proof adduced or the character of the plaintiff's witnesses were such that the trial judge was bound to be satisfied that the plaintiff had made out a strong and conclusive case.

We think, therefore, that the judgment must be affirmed, with costs. All concur.

(26 Misc. Rep. 208.)

WOOD et al. v. COMMON COUNCIL OF CITY OF BINGHAMTON et al.

(Supreme Court, Special Term, Broome County. February 4, 1899.)

1. STREET RAILROADS—STREETS—OBLIGATION TO PAVE.

General Railroad Law, § 98 (Laws 1890, c. 565), as amended by Laws 1892, c. 676, providing that every street surface railroad corporation, so long as it shall use any of its tracks in any street in a city, shall keep in permanent repair that portion of such street between its tracks, the rails of its tracks, and two feet in width outside thereof, as and whenever required by the local authorities to do so, applies to every street surface railroad company, whether incorporated prior or subsequent to the act.

2. SAME—EXEMPTION.

The omission, in a charter of a street-railroad company, of a provision compelling it to pave streets along its tracks, does not vest in it or its successors a perpetual exemption from such obligation subsequently im-

posed by the legislature under the power given it by Const. art. 8, § 1, providing that all general laws creating corporations may be altered from time to time.

3. SAME—VESTED RIGHTS.
The term "vested rights" relates to property rights only, and does not embrace an immunity or exemption created by an omission, in a statute incorporating a street surface railway company, to impose a liability on it to pave parts of streets occupied by its tracks.

4. SAME—CITY COUNCIL—POWER TO EXEMPT.
A city council has no power to exempt a street-railroad company, by contract or otherwise, from the provisions of General Railroad Law, § 98, as amended by Laws 1892, c. 676, requiring all street surface railroads to pave certain portions of streets occupied by their tracks.

5. SAME—EXEMPTION CONTRACT—LEGALIZING STATUTE—CONSTITUTIONALITY.
Laws 1893, c. 231, legalizing a contract between the city of Binghamton and the Binghamton Railroad Company exempting it from part of the provisions of General Railroad Law, § 98, as amended by Laws 1892. c. 676, requiring it to pave certain portions of streets occupied by it, is not void as a grant to the company of an "exclusive immunity" forbidden by the constitution.

6. SAME—REPEAL.
Nor was such legalizing act repealed by implication by Laws 1893, c. 434, § 90, passed a month thereafter, providing that the general law requiring street-railroad companies to pave certain portions of streets along their tracks shall apply to every corporation, however organized; nor by Laws 1895, c. 933, which, in amending the general railroad law in other unrelated respects, necessarily re-enacted section 90.

7. SAME—VALIDITY.
Laws 1893, c. 231, legalizing a contract between the city of Binghamton and the Binghamton Railroad Company, exempting the latter from liability to pave parts of streets occupied by it, was not void because it validated a contract void for want of power in the city to make it, since the legislature may confer such power by retrospective legislation.

Action by James B. Wood and others against the common council of the city of Binghamton and others. Judgment for defendants.

Alex. & A. W. Cummings and Charles S. Hall, for plaintiffs.
Frank Stewart, for defendant common council.
George B. Curtiss, for defendant Binghamton R. Co.

MATTICE, J. The plaintiffs are taxpayers of the city of Binghamton, and own lands abutting Front street, between Main and Ferry streets, liable to be assessed for paving and other street improvements. As such taxpayers, they bring this action to restrain the collection of taxes for the expense of paving Front street in 1897 between the rails of the track of the Binghamton Railroad Company and two feet in width outside such tracks, and to compel the defendant the Binghamton Railroad Company to pay such expense, less the cost of paving one foot in width between the rails, which such company has already paid. The defendant the Binghamton Railroad Company was permitted, by an order of this court, upon its application, to come in and defend as a party defendant.

The Binghamton Railroad Company was formed by a consolidation of the Binghamton Street-Railroad Company and the Binghamton & Port Dickinson Railroad Company, August 11, 1892, in accordance with chapter 565 of the Laws of 1890, as amended by chapter 676 of the Laws of 1892. The Binghamton Street-Railroad Company had

theretofore been duly formed, March 24, 1890, by a consolidation of the Washington Street, Asylum & Park Railroad Company, the Binghamton Central Railroad Company, and the City Railroad Company, under chapter 108 of the Laws of 1875. The City Railroad Company was organized in 1883, under chapter 140 of the Laws of 1850. The Binghamton Central Railroad Company was also incorporated the same year, under the same act. The Binghamton & Port Dickinson Railroad Company was incorporated in 1868 by special charter (chapter 501 of the Laws of 1868). The Washington Street, Asylum & Park Railroad was formed, under chapter 917 of the Laws of 1869, as amended by chapter 108 of the Laws of 1875, by a consolidation of the Washington Street & State Asylum Railroad with the Park Avenue Railroad. The Washington Street & State Asylum Railroad was organized in 1871, under the act of 1850. The Park Avenue Railroad Company was organized in 1882, under the same act. The defendant the Binghamton Railroad Company, by virtue of the various articles of consolidation, and the statutes under which each consolidation was effected, succeeded to all the rights, franchises, and privileges of each of the companies named, and also became burdened with all of the duties and obligations of each of said companies.

Prior to the passage of the general railroad law of 1890, no obligation rested upon any of the street railroads of the city of Binghamton to contribute to the cost of paving streets. The act of 1884, which required street surface railroad companies to have and keep in permanent repair the space between its rails and two feet in width outside of the rails, applied only to companies organized under that act, and therefore none of the companies named came within the purview of that statute. In the action of City of Binghamton v. Binghamton & P. D. Ry. Co., reported in 61 Hun, 479, 16 N. Y. Supp. 225, it was held that no obligation rested upon the railroad company to contribute to the pavement of Chenango street. But that decision was based upon a state of facts existing before the passage of the general railroad act of 1890. It was not contended in that action that the defendant was amenable to chapter 252 of the Laws of 1884, but it was claimed that there existed a liability by reason of a condition of its franchise contained in chapter 501 of the Laws of 1868, under which the company was organized. The then general term held (Merwin, J., writing the opinion of the court) that the obligation imposed by that act, to wit, that the company should "keep the surface of the streets and highways within the rails and for one foot outside thereof, and to the extent of the ties, in good and proper order and repair," did not require the railroad company to contribute to the cost of new pavement, especially in the absence of proof that the company had failed to perform the statutory obligation to keep the street within the rails and one foot outside thereof, and to the extent of the ties, in good and proper order and repair. That decision does not aid us in determining the questions here presented, for the reason that it was decided upon the law as it existed prior to the enactment of the general railroad law.

Section 98 of the general railroad law (being chapter 565 of the

Laws of 1890, as amended by chapter 676 of the Laws of 1892) reads as follows:

"Every street surface railroad corporation so long as it shall continue to use any of its tracks in any street, avenue or public place in any city or village shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe."

If a doubt existed as to the applicability of that section to every street surface railroad, by reason of the language of section 90, as amended by chapter 676 of the Laws of 1892, such doubt was removed by the amendment to section 90 by chapter 434 of the Laws of 1893, and again by chapter 933 of the Laws of 1895, which clearly make section 98 apply to every street surface railroad, whether incorporated under the provisions of chapter 252 of the Laws of 1884, the general railroad law, or any other law. Section 98 therefore applies to every street surface railroad company incorporated under statutes enacted prior to 1884, as well as to those incorporated under the act of 1884, or under subsequent enactments. It has been settled by the court of appeals in Conway v. City of Rochester, 157 N. Y. 33, 51 N. E. 395, that abutting owners are not liable for the cost of paving between the tracks and the rails of the tracks, and for two feet in width outside of the tracks, of a street surface railroad company operating its road in such street. It was also settled by the same decision that the duty of the common council of the city to give a street surface railroad company operating its tracks in the street the 30-days notice required in section 98 is mandatory. While it is true that the defendant the Binghamton Railroad Company became vested with all the rights belonging to the several companies at the time of consolidation, and that statutes under which the several companies were organized did not impose an obligation to pave streets, yet the omission in such statutes to require the companies to pave did not vest in them or their successor, the Binghamton Railroad Company, any right to be perpetually exempted from such obligation, if the legislature should impose it. The legislature has the undoubted right to impose such obligation at any time, even though such right was not reserved in the statutes under which the companies were incorporated. That power was given the legislature by the constitution, which provides (article 8, § 1) that all general laws and special acts creating corporations may be altered from time to time. The legislature has repeatedly and constantly exercised this power, at least since the adoption of the constitution in 1846. The term "vested right" relates to property rights, and does not embrace within its meaning the immunity or exemption created by an omission in the statute under which the incorporation was effected, to impose a liability for the paving of streets used and occupied by a street surface railroad. If it were not so, the general railroad law would be ineffectual to obligate any street surface railroad in the state to pay its proportionate share of paving, if incorporated under acts which did not so provide. The effect of the decision in the Conway Case, I think, settles that question beyond controversy.

If nothing further appeared in the case under consideration, the plaintiffs would be entitled to the relief sought, for the reason that, under the general railroad law as amended, it would be the duty of the defendant the Binghamton Railroad Company to pay the expense of paving the space between the rails of its tracks and two feet in width outside thereof, and the city of Binghamton would have no power to assess such expense upon the abutting owners or the city at large. The defendants, however, interpose a defense, and claim that the defendant railroad company is exempt from the duty to pave as required by section 98 of the provisions of the general railroad law by virtue of a contract or contracts made between the common council of the city of Binghamton and the Binghamton & Port Dickinson Railroad Company and the Binghamton Railroad April 26, 1892, and which contracts were confirmed, ratified, or legalized by the legislature by chapter 231, Laws 1893, passed March 28, 1893. These contracts, in effect, provided that the railroad company should pay about the sum of $1,000 towards the expense of paving Chenango street; that thereafter the company should pay one-fifth of the expense of future paving and repairing between the rails of its tracks, and should erect poles of a certain description, which might be used by the city for the purpose of stringing electric light and fire-alarm wires. The contract made sundry other provisions, which it is not necessary here to enumerate. This contract, if valid, required the railroad company to pay one-fifth of the cost of paving between its tracks and the rails of its tracks for all extensions of the road of the Binghamton Railroad Company through any of the streets of the city. The contract, if valid, would apply to the extension of the road along Front street in question, and, if valid, would exempt the company from the liability to pay more than the expense of paving one-fifth in width between the rails. This contract was made before section 90 of the general railroad act of 1890 had been amended by the law of 1892. As the general railroad law then stood, an obligation was imposed upon the defendant the Binghamton Railroad Company to comply with the provisions of section 98, which required, as before stated, a street surface railroad company to pay the expense of paving between its tracks, the rails of its tracks, and two feet in width outside. I think it is beyond question that the common council of the city of Binghamton was wholly without power to exempt the defendant from the provisions of the general railroad law. No such power is found in the charter of the city, and none can be implied. To hold that the common council possessed such power would be to hold that the common council of every city could, by resolution or contract, render nugatory the general railroad law, so far as it imposed upon street surface railroad companies the duty of sharing the expense of paving. It is a curious fact, and worthy of note, that shortly after the making of this contract the legislature, by chapter 676 of the Laws of 1892, amended section 90 of the general railroad law of 1890 by substituting these words, "A corporation organized since May 6th, 1884, for the purpose of building and operating or extending a street surface railroad or any of its branches, for public use in the conveyance of persons and property in cars for compensa-

tion, upon and along any street, avenue, road or highway, in any city, town or village, or in any two or more civil divisions of the state, must comply with the provisions of this article," in place of the following words appearing in section 90 of the general railroad law of 1890: "A corporation organized for the purpose of building and operating or extending a street railroad or any of its branches, for public use in the conveyance of persons and property in cars for compensation, upon and along any street, avenue, road or highway, in any city, town or village, or in any two or more civil divisions of the state, must comply with the provisions of this article." I have been unable to discover any reason whatever for the amendment, unless it was to exempt from the operation of the article relating to street surface railroads all street surface railroads except those organized since May 6, 1884. It is claimed by the learned counsel for the defense that such was the object of the amendment, and that the language, "a corporation organized since May 6th, 1884, must comply with the provisions of this article," necessarily exempts all other street surface railroads from the duty of complying with such provisions, and is equivalent to an enactment that every corporation organized before May 6, 1884, need not comply with the provisions of that article. If the construction put upon it by counsel be correct, then no obligation rested upon the defendant the Binghamton Railroad Company to share in the expense of paving at the time the legalizing act was passed,—for the amendment just referred to was then in force,—unless the Binghamton Railroad Company could be regarded as a corporation organized since May 6, 1884. Twenty-two days after the legalizing act was passed, in 1893, the legislature passed chapter 434 of the Laws of 1893, which again amended section 90 of the general railroad act of 1890, making it read as follows: "The provisions of this article shall apply to every corporation which under the provisions thereof or of any other law has constructed or shall construct or operate or has been or shall be organized to construct or operate a street surface railroad," etc., "must comply with the provisions of this article." This amendment practically restored the section to the same condition as it existed when passed, in 1890, and made it apply to every street surface railroad, no matter when organized. As before stated, it removed all doubt, if any existed, as to the applicability of the general railroad law to all the street surface railroads in the state.

There remain but two important questions to determine: First. Is the legalizing act of 1893, validating the contract of March 28, 1892, void by reason of granting to the defendant the street-railroad company an exclusive immunity, forbidden by the constitution? Second. If such act was not repugnant to the constitution, and did validate such contract, was the act repealed by implication, and the contract therefore annulled, by reason of the amendment to section 90 by chapter 434 of the Laws of 1893, passed, as before stated, by the same legislature, 22 days after the passage of the legalizing act?

I think both of these questions must be answered in the negative. The inhibition of the constitution forbids the passage of local or private bills granting to corporations, associations, or individuals ex-

clusive privileges, immunities, or franchises. The effect of the legalizing act was to exempt the railroad company from certain provisions of a general law. And that is the most that can be said of it. It was an immunity from a general law. Without the existence of the general law, it was no immunity whatever, but simply a contract. An exclusive immunity is one that, either from the terms of the grant, or as a result of the provisions of the grant, excludes all others from a like enjoyment. It may be a special immunity enjoyed by no other street surface railroad in the state, yet it is not an exclusive immunity. Counsel for the plaintiffs, in a very elaborate and ingenious argument, claims that every grant of an immunity is of necessity an exclusive one; but his reasoning will not stand the test of scrutiny. Every immunity is exclusive, in the sense that all others are necessarily excluded from the enjoyment of the same immunity. So, also, is the grant of every franchise or privilege an exclusive one, in the sense that all others are excluded from the enjoyment of that particular franchise or privilege. The true test is not, are all others excluded from the enjoyment of that particular grant? but are all others excluded from the enjoyment of a like grant? The fact that no others enjoy a like immunity does not render the immunity exclusive. It is not whether others enjoy a similar privilege, immunity, or franchise, but are others prohibited from a similar enjoyment by reason of the enactment? Manifestly, others are not excluded from a like immunity by reason of this legalizing act, but because the legislature has not granted to them a like immunity. In pointing out the distinction between an exclusive privilege, resulting from the inherent nature of the thing granted, and one resulting from the provisions of the grant as contemplated by the constitution, Rapallo, J., says in Re Union Ferry Co., 98 N. Y. 140–154:

"But it is contended that this particular designation of the particular piece of property to be condemned for the purposes of the ferry renders the grant of the privilege or authority exclusive, inasmuch as no one but the grantee of the power can take the same property. That, however, is not, in our judgment, the nature of the exclusiveness contemplated by the constitution. The exclusiveness prohibited is one which is created by the terms of the grant, not that which results from the nature of the property or right granted. * * * In such a case the exclusiveness is not produced by the grant, but results from the nature of the thing granted, and to this extent every grant to a corporation or an individual of the right to acquire real estate is exclusive. Where a toll bridge is authorized to be erected at a particular locality, the right to that particular bridge is necessarily exclusive. So all the lands acquired by a railroad company for depots, car yards, etc.; their right to enjoy those lands is exclusive. The right of the owner of upland to fill out into waters of the state in front of his land is exclusive in respect to the particular property involved, though a similar right may be conferred upon every person holding lands similarly situated. * * * We think that in all these cases the exclusion of others from the enjoyment of rights or privileges similar to those bestowed upon the particular grantee must, in order to come within the constitutional prohibition, result from the provisions of the grant, and not from the inherent nature of the right granted."

I think it is quite clear that the immunity granted to the defendant railroad company as a result of the provisions of the legalizing act is not an exclusive one, within the meaning of the constitution.

Neither can there be any criticism of the legalizing act because it

attempted to make valid a contract void at the time of execution, resulting from a want of power on the part of the city. It is well settled that the legislature may confer power on a municipality by retrospective legislation, and such ratification of an act already done is equivalent to an original authority to do the same act. The legalizing act was therefore as effective as though the power had been conferred upon the city before the contract was made. Brown v. Mayor, etc., 63 N. Y. 239–244; People v. Mitchell, 35 N. Y. 551; Town of Duanesburgh v. Jenkins, 57 N. Y. 194; Rogers v. Smith, 5 Hun, 475. It is not claimed that the legalizing act has been expressly repealed. A special or local statute will not be held to be repealed by a subsequent general act, unless the legislative intent is clear. "It is a principle that a general statute, without negative words, will not repeal, by implication from their repugnancy, the provisions of a former one, which is special or local, unless there is something in the general law, or in the course of legislation upon its subject-matter, that makes it manifest that the legislature contemplated and intended a repeal." Suth. St. Const. §§ 157, 158. "The law does not favor a repeal of statutes by implication. To work a repeal by implication, the intent of the legislature must be very apparent, or the two laws must be so incongruous and repugnant that effect cannot be given to both." In re Central Park Com'rs, 50 N. Y. 497. In Casterton v. Town of Vienna, 17 App. Div. 94, 44 N. Y. Supp. 868, it was held that a general statute does not repeal a special one relating to the same subject, unless the general statute is a codification of the law relating to the subject, or expressly or by clear implication repeals the special statute. In Parker v. Railroad Co., 27 App. Div. 383, 49 N. Y. Supp. 1127, it was held that the general railroad law of 1890 repealed by implication the special act of 1872 under which the defendant was permitted to charge a fare of four cents per mile. That decision was made upon the theory that the general railroad act was, in effect, a codification of the entire railroad law, and was also, in effect, a culmination of years of legislation on the subject. The course of legislation for many years upon the subject made it quite apparent that the legislature intended by the general railroad act of 1890 to supersede all previous special legislation in conflict therewith. It must be remembered that the legalizing act however, was not passed until after the general railroad act, and therefore the reasoning of the learned appellate division in this department in the case last cited does not apply. It must also be borne in mind that the statute which it is claimed repeals the legalizing act by implication was a mere amendment to section 90, and was not a codification of the laws upon the subject, or the result of years of legislation upon the same subject. Moreover, this amendment to the general law was passed by the same legislature that passed the legalizing act, and within less than a month after its passage. Under the legalizing act, and by its terms, the defendant the Binghamton Railroad Company became vested with certain property rights; and it cannot be assumed that the legislature at the same session, by the mere amendment to the general law, intended to take away the rights thus vested. The railroad company had paid the sum of more than $1,000

towards the paving of Chenango street, in settlement of litigation, after the general term, in City of Binghamton v. Binghamton & P. D. Ry. Co., cited supra, had held that no such obligation existed; and the railroad company had obligated itself to construct its road in a particular way, to give the city certain privileges, heretofore enumerated. The rights, therefore, of the railroad company, were to some extent, at least, vested ones, which were known to the legislature, as evidenced by the language of the legalizing act. I refer to this as being some evidence of an intent on the part of the legislature not to repeal the legalizing act.

Again, it is doubtful whether, under section 33 of the statutory construction law, an act passed by the legislature repeals by implication another act passed at the same session. In the case of People v. Waring, 1 App. Div. 594, 37 N. Y. Supp. 478, it was held that a mere amendment to a general law passed a few days after the passage of a special act did not repeal the special act by implication. This case was affirmed in 149 N. Y. 621, 44 N. E. 1127, on the opinion of Williams, J., in the court below. In the course of the opinion, Williams, J., says:

"If such was the intention of the legislature when it passed chapter 269 of the Laws of 1892 (special act), certainly no change of intention could be inferred or deduced from the amendment of the act of 1888 (general law) by chapter 577 of 1892. This amendment took effect only a few days less than a month after chapter 269 of the Laws of 1892."

In People v. Keller, 31 App. Div. 248, 52 N. Y. Supp. 950, the same principle was held. See, also, Lewis v. City of Syracuse, 13 App. Div. 587, 43 N. Y. Supp. 455, and Boechst v. Brown, 9 App. Div. 371, 41 N. Y. Supp. 467. In the last case it was held that, where a provision of the Code was in conflict with the charter of the city of Buffalo, the charter, being a special local law, was not repealed. In the Syracuse Case it was held that the general law (chapter 572 of 1886) which limited the time in which a cause for negligence should accrue did not operate to repeal a section of the charter of the city of Syracuse which provided a different period of limitation.

Neither is there anything in the amendment of the general railroad law (chapter 933, Laws of 1895) to indicate an intent upon the part of the legislature to repeal by implication the legalizing act. The amendment of 1895 sought to amend the general law in certain other matters, which did not affect the questions at bar; and in making such amendment it became necessary to re-enact section 90 as amended by the laws of 1893, using the identical language, so far as it relates to the questions here.

It is not within the province of this court to pass upon the wisdom of the special act. Our duty is limited to an investigation of the power and intent of the legislature. I am fully convinced that the legislature had power to make the enactment, and that it did not intend to repeal such special law by the subsequent amendments to the general law. The conditions imposed by the common council of the city as a prerequisite to granting the defendant railroad company the right to construct its road in Front street were only such as the general railroad law required. Those conditions are declared to be

56 N.Y.S.—8

only such as are "pertinent thereto." The conditions so imposed are only applicable so far as they do not conflict with the contract of 1892.

The foregoing views lead to the conclusion that the defendants are entitled to judgment dismissing the complaint on the merits. Counsel for defendants will prepare formal findings, which may be settled on three days' notice. The question of costs may be reserved until such settlement.