(113 App. Div. 1)

PEOPLE ex rel. LOW v. WILSON et al., Assessors.

(Supreme Court, Appellate Division, Third Department. May 2, 1906.)

TAXATION—REAL PROPERTY—WHERE ASSESSABLE—"FARM OR LOT."

A tract of land containing 32,000 acres, 18,000 acres of which are in one town and 14,000 in another, the entire tract being mountainous, woody, covered with lakes, containing a number of buildings, some of which were in each town and used for residences, hunting lodges, servants' residences, and in the manufacture on a large scale of maple sugar and lumber, is not a farm or lot within Tax Law, Laws 1896, p. 801, c. 908, § 10, as amended by Laws 1902, p. 504, c. 200, providing that, if a farm or lot is divided by a line between two tax districts, and the owner resides thereon, it shall be assessed to him in the district in which he lives.

Appeal from Special Term, St. Lawrence County.

Certiorari by the people, on relation of Abbot Augustus Low, against George B. Wilson and others, as assessors in the town of Colton in the county of St. Lawrence, to review proceedings of the respondents in assessing real estate of the relator. From a judgment for respondents, relator appeals. Affirmed.

Argued before PARKER, P. J., and SMITH, CHESTER, and COCHRANE, JJ.

William Allaire Shortt, for relator.
C. S. Ferris and A. X. Parker, for respondents.

COCHRANE, J. In the year 1902 the relator was the owner of over 32,000 acres of land, of which over 18,000 acres were in the town of Colton, and 14,000 acres in the adjoining town of Piercefield; both of said towns being in the county of St. Lawrence. This land constituted a solid and contiguous tract nearly rectangular in shape, and that portion thereof which is within the town of Colton is about 6 miles in one direction and 4½ miles in the other direction. Ponds, lakes, streams, mountains, and valleys intersperse the entire tract. The relator's residence was on that portion of the land situated in the town of Piercefield at a place called Horseshoe on the western shore of Horseshoe Lake. From this latter place the relator had constructed three narrow gauge railroads extending to various points of his large domain. At this place also he had buildings of various kinds, including a house for his employés, a blacksmith shop, where a blacksmith and helper were constantly engaged, a plant for generating electricity, a stable where horses and cows were kept, an engine house for the locomotives used by him on his narrow gauge roads, storehouses, and buildings used in the manufacture of maple sugar, and boathouses. At the eastern end of Horseshoe Lake in Piercefield was an extensive plant for reducing maple sap to syrup, and in close proximity thereto was a maple wood where about 15,000 trees were tapped annually. On another lake in Piercefield, known as "Big Trout Lake," was a hunting camp where a man lived constantly. About five miles from the relator's residence, and connected therewith by a good turnpike road, was Camp Marian, situated on a lake of the same name in about the center of the Colton tract. Here was a house occupied by the employés of the relator, a stable and barn like other farm

buildings in the town, about 15 small buildings used by the relator, his family, and guests, in summer, a large office or administration building, a large two-story structure used for dances and other social functions, and a boathouse. At different places on the tract in Colton were two other large structures provided with apparatus for evaporating maple sap, a process in the manufacture of sugar, and about each structure was a maple wood each covering an area of about 1½ miles, and each containing about 15,000 trees which were cultivated in such a way as to yield the maximum of productiveness. Lumber operations had also been engaged in by the relator, and plants and buildings for such purpose and dwelling houses for the men engaged therein had been constructed at various places. The entire tract is located in what is known as the "Adirondack Wilderness," and is wild and uncultivated, except a very small portion thereof not exceeding 25 acres, and the land as a whole is not fit for agricultural purposes as generally understood.

The respondents, assessors of the town of Colton, in 1902, assessed that part of said land consisting of over 18,000 acres situated in said town of Colton as nonresident lands, and it is such action on their part which constitutes the grievance of the relator; he claiming that all of the 32,000 acres should be assessed in the town of Piercefield, where he resides. This contention of the relator involves a construction of sections 9 and 10 of the tax law (Laws 1896, p. 801, c. 908) as amended in 1902 (Laws 1902, p. 457, c. 171, and page 504, c. 200). It is unnecessary to review at length the history of the legislation affecting this subject. Such history was tersely and aptly summarized by Mr. Justice Follett, in Casterton v. Town of Vienna, 17 App. Div. 98, 44 N. Y. Supp. 870, as follows:

"Permitting lands situated in one town to be assessed in another town is and always has been an exception to the general statutes regulating the assessment of realty."

The general scheme of taxation, as expressed in sections 9 and 10 of the tax law, as amended, is that real property shall be assessed in the tax district in which it is situated. But section 10 contains an exception to this rule, as follows, viz.:

"If a farm or lot is divided by a line between two or more tax districts and the owner resides thereon it shall be assessed to him in the district in which he resides."

The reason for this exception is obvious. A "farm or lot," in the ordinary sense of the term, is not susceptible of easy division, and it would be unnatural and frequently difficult or embarrassing to make such division. As a matter of convenience, both for the taxpayer and the municipality, it is desirable that a farm or lot be taxed as one body, and ordinarily no substantial injustice can result from such a method. The relator claims that he is within this exception, and that his tract of over 32,000 acres of land is a "farm or lot," within the meaning of the statute under consideration. A mere statement of the facts as above set forth refutes such contention. It is true that certain industries are to a certain extent conducted by the relator on the land in question. But in no sense can such land properly be character-

ized as farm land. The reasons for the exception in the statute which permits a farm or lot divided by a line between tax districts to be assessed in the district where the owner resides do not exist in this case. No one will be much inconvenienced by assessing each portion within the town where it is located. The appropriate division and adjustment of assessment can be made with very little difficulty, and it would be most unjust to the town of Colton to be deprived of the taxes which would naturally flow from this large tract of land within its borders. The terms "farm" and "lot," as used in section 10 of the tax law, are to be understood in their ordinary and popular sense, and are not to be construed as including a large area of the character and extent here presented. That part of the relator's land which is within the town of Colton was properly assessed by the assessors of that town.

The judgment should be affirmed, with costs. All concur.